## PUCCINELLI v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. April 27, 1925.)

No. 4538.

**1. Criminal law ⊝➝1216(2) — Sentences run concurrently, in absence of provision specifying order of sequence.**

Sentences imposed on verdicts or pleas of guilty on several indictments, or on several counts of same indictment, in same court, run concurrently, in absence of specific provision that sentences shall run consecutively, specifying order of sequence.

**2. Criminal law ⊝➝996(2)—After expiration of term of court and of longest term of imprisonment, court could not amend judgments to make sentences run consecutively.**

After expiration of term of court and of longest term of imprisonment imposed under pleas of guilty to four indictments, court was not authorized of its own motion, without any minute, note, or record evidence of any kind, to extend term of imprisonment by amending judgments nunc pro tunc so that sentences should run consecutively.

Appeal from the District Court of the United States for the Northern Division of the Northern District of California; John S. Partridge, Judge.

Proceeding between the United States and Joe Puccinelli. From an order denying a writ of habeas corpus, Puccinelli appeals. Reversed and remanded, with directions.

Clifford A. Russell and Donald McKisick, both of Sacramento, Cal., for appellant.

Sterling Carr, U. S. Atty., and T. J. Riordan, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. March 11, 1924, Joe Puccinelli entered a plea of guilty to four informations under the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) in cases numbered 2018, 2019, 2159, and 2162. The record does not disclose the exact nature of the offenses, but the several sentences were as follows: Case No. 2018, a fine of $500, without any order of commitment; case No. 2019, a fine of $500 and imprisonment in the county jail for three months, and, in default of payment of the fine, a further term of imprisonment in the county jail for the period of five months; case No. 2159, a fine of $1,000 and imprisonment in the county jail for one year, and, in default of payment of the fine, a further term of imprisonment in the county jail for the period of ten months; case

No. 2162, a fine of $1,000 and imprisonment in the county jail for one year, and, in default of payment of the fine, a further term of imprisonment in the county jail for the period of ten months.·

January 12, 1925, the prisoner appeared before a United States commissioner and took the oath prescribed by section 1042 of the Revised Statutes (Comp. St. § 1706). February 11, 1925, he applied to the United States commissioner for a release under the above section, but his application was denied. On the following day he petitioned the court for an order directing the United States commissioner to issue an order releasing him from further imprisonment, but his petition was denied. On the next day, February 13, 1925, the following orders were entered in each of the several cases:

"Case No. 2018.—Ordered that any pauper's oath that defendant may make in this cause shall be of no avail to him."

"Case No. 2019.—Ordered that any pauper's oath that defendant may make in this cause shall be of no avail to him."

"Case No. 2159.—The court on its own motion ordered that the order and the judgment heretofore entered on March 11, 1924, be and the same is hereby amended so that the sentence herein shall run consecutively to the sentence imposed in case No. 2019, U. S. v. Joseph Puccinelli.

"Further ordered that any pauper's oath that defendant may make in this cause shall be of no avail to him."

"Case No. 2162.—The court on its own motion ordered that the order and the judgment heretofore entered on March 11, 1924, be and the same is hereby amended so that the sentence herein shall run consecutively to the sentence imposed in case No. 2159, U. S. v. Joseph Puccinelli.

"Further ordered that any pauper's oath that defendant may make in this cause shall be of no avail to him."

The prisoner thereafter applied to the court below for a writ of habeas corpus, but his application was denied. From the latter order this appeal is prosecuted.

[1] Where sentences are imposed on verdicts of guilty or pleas of guilty on several indictments, or on several counts of the same indictment, in the same court, each sentence begins to run at once and all run concurrently, in the absence of some definite, specific provision that the sentences shall run consecutively, specifying the order of sequence. United States v. Patterson (C. C.) 29 F. 775; Daugherty v. United States (C. C. A.) 2 F.(2d) 691. By entering the amendatory

orders of February 13, 1925, the court below recognized this rule, and the government, we understand, concedes it. Inasmuch as the appellant had already served the longest· term of imprisonment imposed by any of the sentences and 30 days' additional when he made application for a writ of habeas. corpus, he was entitled to a discharge, unless the orders of February 13 justify his further detention. Wagner v. United States (C. C. A.) 3 F.(2d) 864. The validity of these orders is therefore the principal question for decision. The orders themselves show upon their face that they were entered by the court of its own motion, and it is conceded that there was no record evidence of any kind to justify or support the amendments.

"According to the generally accepted rule, the evidence to justify the entry of a judgment nunc pro tunc must be record evidence, that is, some entry, note, or memorandum from the records or quasi records of the court, which shows in itself, without the aid of parol evidence, that the alleged judgment was rendered." 34 C. J. 79.

This rule is supported by the overwhelming weight of authority. In United States v. Patterson, supra, the defendant was sentenced to imprisonment at hard labor for the term of five years upon each of three indictments, "said terms not to run concurrently." After having served a term of imprisonment for the full period of five years, the· prisoner made application to Mr. Justice Bradley for a writ of habeas corpus. The learned judge held that the three sentences ran concurrently, because the order of sequence was not specified, and said:

"If there were any way in which the district court could amend the judgment, the case might perhaps be different. But I see no way in which it could do so without passing a new sentence, and that it could not do now, after the term has passed, and after one term of imprisonment has been suffered. What right would the court have now to determine that the expired term was due to any particular indictment more than to either of the others?

"I have carefully read the able opinion of the Supreme Court of New Jersey in the case of Gibbs v. State, 45 N. J. Law, 379, and agree to all that the court there says as to the right of a criminal court to extend its judgment and proceedings on the record in proper form, regardless of imperfections in the minutes of its clerk. But in the present case there are no materials in existence for altering the form of the judgment under

consideration—at least nothing but what may rest in the bosom of the judge; and for him to resort to his memory at this day to alter the judgment would be to render a new judgment. It is unnecessary to say that the honorable judge of the district court would not adopt a proceeding so questionable and hazardous. The district attorney has supplied me with a certified copy, literatim, with all the erasures and interlineations of the rough minutes; but they exhibit nothing upon which the court could base any substantial alteration in the judgment as recorded."

The sentence before the court in that case was far more favorable to the contention of the government than are the sentences before this court, because there the sentence contained an express provision that the different terms should not run concurrently; whereas, the original sentences in this case contained no such provision. The government, and the court below, rely very largely upon Wight, Petitioner, 134 U. S. 136, 10 S. Ct. 487, 33 L. Ed. 865. There a motion for a new trial, after verdict of guilty, and a motion in arrest of judgment, were transferred by the District Court to the Circuit Court. The motions were later heard in the Circuit Court and denied, as appeared from its records, but no order was entered remitting the case to the District Court. On the date on which the motions were denied in the Circuit Court, the District Court imposed sentence. An application for a writ of habeas corpus was thereafter made to the United States Circuit Court upon the ground that the District Court was without jurisdiction to impose sentence because at the date of sentence the case had not been remitted by the Circuit Court. After the application for a writ of habeas corpus was filed, the Circuit Court amended its records by entering an order nunc pro tunc, as of the date of the denial of the motion for a new trial and motion in arrest of judgment, remitting the case to the District Court. The validity of that order was under consideration in the Wight Case, and in the course of its opinion the court said:

"Our first impression was that whatever might be the powers of the courts in this regard over their records during the term in which the transactions are supposed to have occurred, the record of which, or failure to make any record of which, is the subject of amendment, yet when it was attempted to do this after an adjournment and at a subsequent term of the court, the powers of the court in making such changes in the records of the proceedings were limited to those in which there remained written memoranda of some kind in the case, and among the files of the court, by which the record could be amended, if erroneous, or the proper entry could be supplied, if one had been omitted. And especially that in criminal procedure this power to make such entries, at a subsequent term of the court, of what had transpired at a former term, as would establish the authority of the court to pass a sentence of fine or imprisonment, either did not exist at all, or, if it did, was limited to cases in which some written evidence of what was done remained in the papers connected with the case."

Upon examination of the authorities, however, the court reached a different conclusion. From that conclusion the Chief Justice and Mr. Justice Harlan dissented, the Chief Justice saying:

"The record before us does not disclose the existence of any minutes of the clerk or notes of the judge that the entry of such an order had been directed, or of any other official evidence to that effect, and I do not understand it to be contended that there was any such. Granting that, as has been said, the judge during the term is a living record, and may alter and supply from memory any order, judgment or decree which has been pronounced, and this, because he is presumed to retain his own action in his recollection; yet after the term has elapsed, the exercise of such a power to the extent of supplying an order upon which jurisdiction depends, in the absence of any entry, minute or memorandum to proceed by, or of any statutory provisions expressly allowing it, ought not to be conceded in criminal cases."

Whether the Patterson Case and the present one can be distinguished from the Wight Case we need not inquire, but it is somewhat significant that Mr. Justice Bradley, who delivered the opinion in the Patterson Case, concurred in the majority opinion in the Wight Case. It would seem, however, that the court went back to its first impressions in the later case of Gagnon v. United States, 193 U. S. 451, 24 S. Ct. 510, 48 L. Ed. 745. In that case the court had under consideration the validity of a nunc pro tunc order naturalizing an alien. The court distinguished between the power to create and the power to amend, and said:

"The power to recreate a record, no evidence of which exists, has been the subject of much discussion in the courts, and the weight of authority is decidedly against the existence of such power. We have examined a large number of authorities upon this

point, and while they do not altogether harmonize in their conclusions, the practice in some States being much more rigid than in others, we have found none which supports the contention that a record may be created to take the place of one of which no written memorandum was made or entered at the time the original judgment was supposed to have been rendered."

Again, the court said:

"It may be gathered from those cases that, if a memorandum be entered upon the calendar that a certain document has been filed, such document, if lost, may be supplied by a copy in the hands of counsel; or where a judgment or order has been entered upon the calendar, which does not appear upon the journal, the court may order a new one to be entered nunc pro tunc. In such cases there is often a memorandum of some kind entered upon the calendar, or found in the files, and there is no impropriety in ascertaining the fact even by parol evidence, and supplying the missing portion of the records. But the exercise of a power to recreate a record where no memorandum whatever exists of such record is evidently a dangerous one, and, although such power may have been occasionally given by the legislature in cases of overwhelming necessity, as, for instance, by the 'lost record act' passed by the general assembly of Illinois after the great fire in Chicago in 1871 (Laws of Illinois, 1871–72, p. 650), such power has not been hitherto supposed to be inherent in courts of general jurisdiction. As the evidence upon which such restoration is made cannot be inquired into, if the jurisdiction to recreate the record exists, it might well happen that, upon the testimony of a single interested witness, the court would order a new record to be entered after a lapse, as in this case, of over thirty years, and when the judge and clerk have both died, and there was no possibility of contradicting the testimony of such single witness."

[2] In the case before us, after the expiration of the term, and after the expiration of the longest term of imprisonment imposed, without any minute of the clerk or any note of the judge, without any record evidence of any kind for its guidance, and without reciting any facts even tending to justify its action, the court below, of its own motion, extended the term of imprisonment from one year to two years and three months, leaving out of consideration the several terms of imprisonment imposed or attempted to be imposed for defaults in the payment of fines. Our attention has not

been called to a single case according any such power or authority to a court of criminal jurisdiction, and we have found none.

"But in no case to which our attention has been directed or which we have been able to discover has any court, by the entry of such an order, corrected a former judgment or sentence in a criminal cause by adding a fine or in any way increasing the penalty denounced against the accused." Smith v. District Court, 132 Iowa, 603, 109 N. W. 1085, 11 Ann. Cas. 296.

See, also, Rutland v. State, 14 Ga. App. 746, 82 S. E. 293; State v. McBee, 10 Kan. App. 450, 61 P. 1093.

We are not disposed to establish the precedent, for, in our opinion, it is better far that this appellant should escape the full penalty which the court intended to impose, than that the fate of every prisoner and the duration of every sentence should depend upon the recollection of the trial judge or the uncertainty of parol testimony for months and perhaps for years after the original sentence was pronounced and entered upon the records of the court. In the language of Mr. Justice Bradley, the court should not adopt a proceeding so questionable and hazardous. To do so is not to amend, but to create.

The judgment of the court below is reversed, and the cause is remanded, with instructions to discharge the prisoner. Mandate forthwith.