## DOWNEY v. UNITED STATES.

### SAME v. COLPOYS, Marshal.
### Nos. 6824–6826, 6851.

United States Court of Appeals for the District of Columbia.

Decided March 22, 1937.

Rehearing Denied May 27, 1937.

Albert A. Stern and Albert Lyman, both of Washington, D. C., for appellant.

Leslie C. Garnett, U. S. Atty., and Allen J. Krouse and Irvin Goldstein, Asst. U. S. Attys., all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

Case No. 6851 (No. 1839 below) is an appeal from an order of the District Court of the United States for the District of Columbia filed August 31, 1936. The order overruled the appellant's demurrer to the answer and return of the United States Marshal to a writ of *habeas corpus* and discharged the writ. Cases Nos. 6824, 6825 and 6826 (Nos. 51,661, 51,662, 51,663 below) are criminal appeals from orders of the same court, filed September 1, 1936, correcting, on motion of the Government, the record of sentences imposed upon the appellant on March 24, 1932. Hearing on the appellant's demurrer in the *habeas corpus* case and on the motion of the Government to correct the record in the three criminal cases was had before the same justice in the trial court. Although there are two records, one in the *habeas corpus* case, and another in the three criminal cases combined, all four cases were presented together on appeal under one brief on the part of each party, and as if there were but one record.

The facts are as follows: The appellant pleaded guilty in the trial court to each of three indictments for robbery and on March 24, 1932, was sentenced to a term of four years in each case, and was committed to the penitentiary. But the record of the sentences as entered by the clerk was ambiguous as to whether the sentences were to run concurrently or consecutively, and it was uncertain, therefore, whether the appellant was to serve four years or twelve.[1] The appellant was confined in the United States Penitentiary at Atlanta, Georgia. At the end of four years he sought release on a writ of *habeas corpus* issued by the District Court of the United States for the Northern District of Georgia, Atlanta Division, and was, after a hearing, by that court ordered discharged. The theory of the order of discharge was that "Serious uncertainty in criminal sentences must be resolved in favor of liberty," Aderhold v. McCarthy (C. C.A.) 65 F.(2d) 452, 453, and that the District Court at Atlanta was bound by the record of the sentences ambiguously written, as above explained, in the clerk's record in the District Court of the United States for the District of Columbia. But the district judge at Atlanta, in order that the Government might have opportunity in some direct proceeding to attempt to correct or clarify the ambiguous record, ordered the appellant's discharge delayed for fifteen days.[2] Before the end of this period a writ of *habeas corpus ad prosequendum* was issued by order of the Chief Justice of the District Court of the United States for the District of Columbia, at the instance of the United States Attorney. This writ ordered the United States Marshal for the District of Columbia to produce the appellant before the court in order that he "shall hear and be advised what order or orders this Court may make respecting certain judgments pronounced by this Court on March 24, 1932 . . .," i. e., the sentences ambiguously recorded. Within the fifteen-day period the appellant was thus returned to the jurisdiction of the court which had imposed the sentences, in order that proceedings might be had in his presence for correction of the record of the sentences. Upon his arrival in the District of Columbia the appellant himself obtained a writ of *habeas corpus,* also issued by order of the Chief Justice of the District Court of the United States for the District of Columbia, directed to the marshal, upon a petition alleging that the marshal was holding the appellant under the commitment of March 24, 1932, and that he had served his sentences. To thîs writ the marshal made return and answer that he was holding the appellant not under the commitment but under the writ of *habeas corpus ad prosequendum.* Appellant demurred to the return and answer upon the ground that it was "bad in substance," and for the further reasons that his continued imprisonment was unlawful, the appellant having, under his theory, served the sentences, that there was nothing to correct since the sentences imposed were valid, that the court was without power to correct the sentences, the term at which they were imposed having expired, that laches barred the Government from correcting the record, and that the same justice who imposed the sentences ought not hear the demurrer. This writ was made returnable before another justice, but Justice Proctor, who im-

---

[1] The ambiguity arose from the fact that although each sentence was made "To take effect from and including this date," i. e., the date of imposition, March 24, 1932, which alone would have made the sentences concurrent, the sentence in the second case (No. 51,662 below) was made, as written, "to run consecutively with [No.] 51663," and the sentence in the latter case was made, as written, "to run consecutively with No. 51661," the first case. Similar ambiguities appeared in the minutes of the court, and in pencil notations upon each of three jackets, kept in the office of the clerk, containing the indictments and other papers.

[2] There is nothing in the record as such evidencing the order of the District Court at Atlanta, but a purported typewritten copy of the opinion of the judge, which concludes in the form of an order, is attached to the appellant's brief herein, and is referred to in that brief in a note as follows:

"Note.—The petitioner [appellant] files herewith as an exhibit a copy of the opinion of Judge Underwood of the District Court of the U. S., Atlanta, Georgia, in reference to the petition for a writ of habeas corpus filed there by this same petitioner, upon the same grounds."

The action of the District Court at Atlanta as evidenced by the opinion is also referred to in the brief of the Government herein. Both briefs state that the appellant was ordered discharged, but that the discharge was delayed as above stated, and we take these facts therefore to be admitted.

posed the sentences, also heard the demurrer.

The errors assigned on the appeal of the *habeas corpus* case are that the trial court erred in overruling the appellant's demurrer and in discharging the writ and not releasing the appellant, and that Justice Proctor erred in proceeding with the consideration and hearing of the petition for the writ and the subsequent proceedings thereunder since the purpose of the writ was to seek relief from an act done by Justice Proctor in reference to the sentences imposed upon the appellant.

■■■ The demurrer was properly overruled and the writ properly discharged. The demurrer admitted the facts stated in the return and answer, and these facts, that the marshal was holding the appellant not under the commitment issued pursuant to the sentences, but under the writ of *habeas corpus ad prosequendum,* were a valid defense to the appellant's own writ. The justices of the District Court of the United States for the District of Columbia have power to issue writs of *habeas corpus.* D.C.Code (1929) tit. 18, § 57, 12 Stat. 762, c. 91; 31 Stat. 1200, c. 854, § 68; also D.C.Code (1929) tit. 24, § 201, 31 Stat. 1372, c. 854, § 1143. Section 57 of Title 18, in addition to providing that "Any justice of said court may issue writs of habeas corpus, to inquire into the cause of detention . . . " (the writ of *habeas corpus ad subjiciendum,* purposed to deliver a prisoner from illegal imprisonment), authorizes the court also to issue "all other writs known in common law and equity practice that may be necessary to the effective exercise of its jurisdiction." The writs of *habeas corpus ad prosequendum, testificandum, deliberandum* "issue when it is necessary to remove a prisoner, in order to prosecute, or bear testimony, in any court, or to be tried in the proper jurisdiction wherein the fact was committed." Ex parte Bollman and Ex parte Swartwout, 4 Cranch, *75, 98, 2 L.Ed. 554, citing 3 Bl.Comm. *129. Proceedings in the absence of the appellant to correct the record would have been improper, since the ultimate question involved, the extent of valid imprisonment to which he might be subjected, was one of vital legal interest to him. We do not understand the appellant to contend that the writ in question is not broad enough to include bringing him, for proceedings to correct the record, before the court which

sentenced and committed him. The proceeding was in aid, in a broad sense a part, of the prosecution "in the proper jurisdiction wherein the fact was committed." The marshal's return was therefore good in substance, and warranted his continuing to hold the appellant for the proceedings in question. The point made by the appellant that the justice who imposed the sentences ought not have considered the petition for the writ is not supported by the record, for, as said above, the writ was issued at the order of the Chief Justice. The point that the justice who imposed the sentences ought not have heard the demurrer is without merit. As above stated the demurrer was to the marshal's return and answer, which was based not on the sentences and commitment but on the writ of *habeas corpus ad prosequendum.* That writ was not issued by Justice Proctor but by the Chief Justice. In this aspect of the case, therefore, Justice Proctor was not sitting in judgment on any act of his own. As will appear below, we take a different view in respect of the proceedings to correct the record, as such.

In the petition in the criminal cases for the writ of *habeas corpus ad prosequendum,* the Government had prayed that upon the arrival of the appellant in the District of Columbia a rule issue against him "to show cause why the judgment records of this Court should not be corrected to conform to the judgments originally pronounced against him," and upon the appellant's arrival such a rule was issued, ordering that he "show cause . . . why this Court should not order a correction of the recorded entries of judgments and sentences to conform to the judgments and sentences *actually and in fact imposed . . .* upon the said Bernard L. Downey, on March 24, 1932, in Criminal Cases 51,661–51, 662–51, 663."[3] The Government filed in the same cases, and in terms similar to those of the rule, a motion moving the court to order a correction of the record. To the rule and motion the appellant answered that the motion should be denied for the reasons that there was nothing to correct since the judgments and sentences were valid, that the court was without power to make the changes sought since the term had passed, and that the Government was barred by laches. The appellant also filed in the criminal cases a "Request for Reassignment of Motion." This was directed to the Chief Justice of the trial court and moved him "to reassign to

3 Italics supplied.

some Justice of this Court other than Justice Proctor, the hearing on the motion herein," upon the ground " . . . That the question at issue is one of determining the validity of a sentence imposed upon petitioner [appellant] by Justice Proctor and as a matter of public policy, it would seem best that its validity be determined by some person other than the one who imposed the sentence." The motion nevertheless came on for hearing before, and was determined by, Justice Proctor.

What took place at the hearing is not made to appear by any bill of exceptions, but only by recitals in the orders entered correcting the record and in a memorandum signed by the trial justice and filed as a part of the record in the criminal cases. But it is apparent from these recitals and from the briefs on appeal that the Government contended that the sentences, as orally uttered by the justice when he imposed them, were consecutive, not concurrent, sentences, and that therefore the recorded entries thereof were in clerical error; and it is apparent that the appellant resisted the making of the correction. Orders of correction were entered.[4] They recite that "upon inspection of said records, so made and entered as aforesaid [on March 24, 1932], it satisfactorily appears to the Court from evidence adduced at the hearing upon said motion and from the memory and recollection of the Justice who pronounced the sentence herein, that the same is not a correct record of the sentence herein imposed on the 24th day of March 1932, [and] it is, therefore, this 28th day of August, 1936, ordered that the record of the sentence imposed herein be corrected now as of the said 24th day of March 1932, according to the facts thereof, so that the same will read as follows: . . . ." Thereafter the sentences in unambiguous terms rewritten, *nunc pro tunc*, require that the appellant be imprisoned for a period of four years in case No. 51,661, to take effect from and including March 24, 1932, and for a period of four years in case No. 51,663, to take effect at the expiration of the sentence in case No. 51,661, and for a period of four years in case No. 51,662, to take effect at the expiration of the sentence in case No. 51,663. The trial justice's memorandum, which is printed in the margin,[5] is in the

---

[4] There was one order in cases Nos. 51,661 and 51,663, and another in case No. 51,662—trial court numbers.

[5] Memorandum

Filed September 19, 1936

* * * * * * * *

On August 27th, Bernard L. Downey was in court with his attorneys, Messrs. Stearn and Lyman, for hearing on the motion of the United States to correct the record of judgments in criminal cases nos. 51661, 51662, 51663. The habeas corpus proceeding was also pending but had been virtually disposed of at an earlier hearing when I had decided that the demurrer to the writ should be overruled and the petition denied.

Mr. Lyman, addressing himself to the motion to correct the records, argued that they were controlling; that they showed valid sentences for concurrent terms of four years each; that the court had no power to correct a judgment valid on its face, and that the government was barred by laches from seeking any correction, citing on the latter point Bronson v. Schulten, 104 U.S. 410, 26 L.Ed. 797, and Railway Co. v. City of Lincoln, 162 F. 133. He also contended that Judge Underwood of the District Court at Atlanta had held the sentences to be concurrent and that his ruling was controlling upon this court.

After considering the matter I have ordered correction of the records in conformity with the motion. I do not consider Judge Underwood's decision binding. He held that the record was ambiguous and that Downey was entitled to the benefit of the most favorable construction thereof. Judge Underwood evidently realizing the possibility of a clerical error, nevertheless required Downey to be held for a period of fifteen days to give the Government opportunity to take steps if it desired for correction of the record. The Department of Justice thereupon initiated the present proceeding, and Downey was brought here to answer the same.

The order correcting the records to show three consecutive terms of four years has been made in view of my clear and positive recollection that such were the sentences pronounced by me. The fact is not disputed. The contention of Downey rests upon other grounds.

I have no doubt of the power to correct the records to plainly conform with the actual sentences imposed. In view of my definite recollection, undisputed in any way, I think it is my duty to make the correction. My recollection was fixed and is confirmed by very strong circumstances. Although a young man Downey had a bad criminal record, including robbery and other felonies. He had only been out of prison a very brief time when

nature of an opinion. In the course thereof it is at one point stated that the fact that the sentences originally pronounced were consecutive "is not disputed," and at another that the trial justice's recollection of the actual sentences imposed is "undisputed in any way," and at a third that the motion of the Government is "supported by clear and undisputed fact." The memorandum recites that the trial justice's recollection "is confirmed by very strong circumstances" —that the appellant though young "had a bad criminal record, including robbery and other felonies," and "had only been out of prison a very brief time when the robberies for which he was to be sentenced were committed," and that it is confirmed also by letters received from the appellant, his parents and his aunt, referring to the sentences as consecutive and asking that they be changed to concurrent. Quotations from these letters appear in the memorandum, and the letters are referred to as being in the files of the justice. The ultimate import of the memorandum is that the court has power to correct the record, and that the Government is not barred by laches, nor by the ruling of the district judge at Atlanta that the appellant was entitled to discharge under the sentences as originally recorded.

The appellant's brief urges the points that the sentences as originally recorded must be construed, if ambiguous, most favorably to the appellant, that the court lacked power, the term having expired, to correct the record, that it was error for the court to correct the record in the criminal cases after the expiration of four years, that is, laches is asserted, and that it was error for the court to consider the letters of the appellant referred to in the memorandum, and error for Justice Proctor to conduct the hearing. There is no bill of exceptions. There was apparently no evidence presented, and no rulings made save as shown by the record. And the record, as above described, constitutes a predicate for the points urged in the brief. Exceptions are not necessary for the review of errors apparent upon the record. Nalle v. Oyster, 230 U.S. 165, 33 S.Ct. 1043, 57 L.Ed. 1439. The assignment of errors does not nicely present all of the points urged in the brief. It assigns that: "The original sentence was lawful in all the above cases, and they called for concurrent sentences of four years in each case. There is nothing to correct since the sentences were valid. The Government is barred by laches from attempting any change of the sentence, or

---

the robberies for which he was to be sentenced were committed. These facts induced me to pronounce consecutive, rather than concurrent terms. Downey pleaded with me to change the same to run concurrently. I refused. He renewed his plea in a letter from the jail dated April 8, 1932, in which he says, "On March 24th, 1932, I was sentenced in your court to a term of 12 years, three four year consecutive sentences." I also received a letter from his mother dated March 31, 1932, containing these words, "now please wont you change the three four year sentences, which run consecutive, to concurrently or even two of them to concurrently"; also a letter from the father dated June 20, 1932, in which appears this passage concerning the son: "At the time he was before you he received three four year sentences to run consecutive." Another letter was received through Mr. Isaac Gans from an aunt with a like reference to the sentence. These letters are in my files and can be had if needed. Many people called personally, all seeking concurrent instead of consecutive terms. Following the sentences I reconsidered the matter, carrying it in mind for an extended period, finally deciding to make no change.

There was this train of unusual circumstances which fixed the matter vividly in my mind. Although I would not alter the record if any doubt existed, yet I think, in view of the motion of the government, supported by clear and undisputed fact, that I have no alternative but to clarify the record. Possibly the doctrine of laches might by analogy apply in cases where the fact was disputed and the record clear. But here, according to Judge Underwood, the record was susceptible of two meanings, one calling for consecutive, the other for concurrent terms. This then could fairly have left the government officials resting upon a record calling for consecutive sentences. It was not a situation which could reasonably have been expected to put them on notice of any error or defect in the record.

I have thought it well to file this memorandum in explanation of my action. It summarizes what was said by me in announcing my conclusions at the final hearing.

Filed 1936.

James M. Proctor

*Justice*

any so-called 'correction'."[6] But, again, plain error can be noticed without assignment. Weems v. United States, 217 U.S. 349, 362, 30 S.Ct. 544, 54 L.Ed. 793, 19 Ann. Cas. 705; United States v. Tennessee & Coosa R. R. Co., 176 U.S. 242, 256, 20 S. Ct. 370, 44 L.Ed. 452; Royal Insurance Company v. Miller, 199 U.S. 353, 369, 26 S.Ct. 46, 50 L.Ed. 226. We proceed therefore to discussion of the points urged in the brief of the appellant.

 Concerning construction of the sentences if ambiguous, and the power of the trial court to correct its record: The sentences as recorded were, as stated at the outset, and as conceded in the Government's brief, ambiguous. It was not possible to tell from the record whether the sentences were to run concurrently or consecutively. Therefore, under the rule recognized in Aderhold v. McCarthy, *supra,* that "Serious uncertainty in criminal sentences must be resolved in favor of liberty," the sentences originally recorded, if not subject to correction, must be construed as concurrent. To such effect see also United States v. Patterson (C.C.) 29 F. 775; Biddle v. Hall (C.C. A.) 15 F.(2d) 840; Puccinelli v. United States (C.C.A.) 5 F.(2d) 6. But a Federal court has power to correct its record to show the truth. In re Wight, 134 U.S. 136, 10 S.Ct. 487, 33 L.Ed. 865; Gonzales v. Cunningham, 164 U.S. 612, 17 S.Ct. 182, 41 L.Ed. 572; Gagnon v. United States, 193 U.S. 451, 24 S.Ct. 510, 48 L.Ed. 745; United States v. Vigil, 10 Wall. 423, 19 L. Ed. 954. And by the great weight of authority this is true even if the term has passed. Rupinski v. United States (C.C.A.) 4 F.(2d) 17. In that case the Circuit Court of Appeals for the Sixth Circuit, speaking through Circuit Judge Mack, said: "While the general rule is that the records and decrees of the court cannot be altered after the term, there is a well-recognized exception in the case of mere clerical errors." See also Phillips v. Negley, 117 U.S. 665, 6 S.Ct. 901, 29 L.Ed. 1013; Ex parte Sibbald v. United States, 12 Pet. 488, 9 L.Ed. 1167; United States v. Mayer, 235 U.S. 55, 35 S.Ct. 16, 59 L.Ed. 129, all cited in Rupinski v. United States. Therefore, the

question here is whether the power of the court to correct its record was lawfully exercised.

 As to laches: The four years' lapse of time from March 24, 1932, the date of the entry of the sentences upon the record, to May 25, 1936, the date of the filing of the motion to correct the record, does not, we think, as such bar the Government. The doctrine of laches is not applicable to the Government in respect of governmental or sovereign rights. Chesapeake & Delaware Canal Co. v. United States, 250 U.S. 123, 39 S.Ct. 407, 63 L.Ed. 889. In respect of the effect otherwise of this lapse of time, we comment later.

 Concerning the asserted erroneous consideration of the appellant's letters referred to in the memorandum and the asserted error in Justice Proctor's himself conducting the hearing: The court had power to correct its record to show the truth, provided its record did not conform thereto. But the exercise of the power to correct was thus contingent upon a showing of disparity between the record and the truth, and hence upon a showing of the truth itself. Concretely, if in the instant cases the uttered sentences were consecutive, the court could correct the record so to show; but if the sentences uttered were concurrent, there was nothing which, legally, required correction.[7] The outstanding question of fact in the cases was, therefore, what was the truth to which the allegedly incorrect record was to be made to conform. And the outstanding question of law was, was the truth ascertained in a lawful manner, were adjective—procedural and evidential—safeguards to fair hearing complied with. We deal here with no mere technicality. A correct answer to the question of fact, as to whether the sentences as uttered were consecutive or concurrent, was of crucial importance to both the appellant and the Government—as important to each, in result, as, for example, a correct determination of the appellant's identity, had that been in issue. At stake for the Government was public protection, and for the appellant, his liberty. If the original sentences, that is, the uttered, as distinguished

---

[6] The assignment of errors also asserts as a bar to the correction of the record the discharge of the appellant by the District Court of the United States at Atlanta, Georgia but this point is not argued in the brief of the appellant and we treat it as abandoned.

[7] That is because the sentences as ambiguously recorded were in consequent legal effect concurrent. But it would have been proper to correct the actual ambiguity in the record so that the sentences as written would clearly read as concurrent.

from the written, sentences, were consecutive, the Government was entitled to confine the appellant eight more years. If they were concurrent, the appellant was entitled to his liberty forthwith. It is difficult to conceive of a more important issue of fact. Liberty is precious, as is also the public protection. The memorandum of the trial justice clearly evidences his own feeling of responsibility in the determination of the legal and factual issues, and no question is raised in the brief of appellant as to his fairness, and there is no such question. The question is a deeper one, whether the necessary adjective safeguards of fair hearing were followed. The case is of first instance in this jurisdiction and must set a proper precedent.

We have noted above the recitals in the orders that they were made upon evidence as well as upon the recollection of the justice. But the reference to evidence, it fairly appears from the memorandum, must have been to the letters in the justice's files or to the record of the sentences as written. There is nothing before us to indicate that evidence as such was introduced. We bear in mind also the recitals in the memorandum that there was no dispute as to the fact that the sentences as uttered were consecutive, and no dispute as to the justice's recollection. But to the contrary there is an assertion in the appellant's petition for a writ of habeas corpus that "in each case the court directed that the sentence was 'to take effect from and including the date upon which it was imposed', . . ." And in the briefs there is an issue as to this, the appellant saying that the "sentences imposed were three 'concurrent' sentences each, of imprisonment of four years . . .," the Government saying that the "court imposed sentences of four years in each case, the said sentences to run consecutively." And as above stated, the memorandum of the trial justice is in the nature of an opinion. It is not a finding of fact; it is not a bill of exceptions; it is, as the justice himself characterized it, a "memorandum in explanation of my action."

We think, moreover, that it appears from the memorandum that the determination of the trial justice that the record should be corrected was not made upon mere absence, if there was such, of dispute as to the form of the sentences as originally uttered, or upon mere absence, if there was such, of dispute as to the justice's recollection. It was made also upon the basis of his recollection and upon circumstances and letters referred to which, as the justice indicated, originally fixed, and at the time of the hearing confirmed, his recollection. Certainly there was a contest over the proposed correction of the record, and there was an objection to this justice's sitting on that contest.

In the determination of the question of fact involved, that is, the question whether the sentences as originally uttered were concurrent or consecutive, the justice, to the extent that he relied upon his own recollection and referred to circumstances and letters, was sitting as both judge and witness, and as witness he gave no evidence, in the legal sense. Any other witness would have been sworn and upon the witness stand would have testified to his recollection and to the circumstances fixing or confirming or refreshing it, would have been subject to cross-examination, especially here in respect of the effect of the four years' lapse of time to dim or not to dim his memory. Documentary data referred to by the witness, such as the letters here, would have been produced and offered in evidence, subject to the scrutiny and possible objection of counsel. In such a proceeding, formally conducted, there would have been a duty of proof, and a burden of proof, upon the moving party, and a right of proof upon the responding party. All of a proceeding thus conducted according to the usual rules of procedure would have been subject to embodiment in a statement of evidence for appeal. The instant hearing, involving as it did the determination of a crucial question of fact, was too informal to insure fairness and accuracy and too informal for review. There is no foundation here for reviewing the correctness of the trial justice's determination of the question of fact as to what sentences he uttered four years before the hearing on the motion and rule.

The law puts no premium upon form for form's sake, but upon form as a safeguard to fair and dependable hearing and review it properly lays great weight. Such relaxation of the rules of evidence or of the formalities of judicial procedure as results in denial of fair hearing in the legal sense has been discountenanced by the United States Supreme Court in Interstate Commerce Commission v. Louisvile & N. R. R. Co., 227 U.S. 88, 33 S.Ct. 185, 57 L.Ed. 431, where, speaking through Mr. Justice Lamar, the Court, though recognizing that the Commission—unlike a court—is not limited to

the strict rules of evidence, nevertheless held it to the imperative "obligation to preserve the essential rules of evidence by which rights are asserted or defended," and forbade the commissioners to "act upon their own information as could jurors in primitive days." Again in United States v. Abilene & S. Ry. Co., 265 U.S. 274, 44 S. Ct. 565, 68 L.Ed. 1016, the Court stated, through Mr. Justice Brandeis, that "a finding without evidence is beyond the power of the [Interstate Commerce] Commission. Papers in the Commission's files are not always evidence in a case. . . . Nothing can be treated as evidence which is not introduced as such." See, also, Kwock Jan Fat v. White, 253 U.S. 454, 40 S.Ct. 566, 64 L.Ed. 1010. If it is incumbent upon an administrative tribunal "to preserve the essential rules of evidence by which rights are asserted or defended," how much more heavily does such a 'duty rest upon a court.

In Puccinelli v. United States, *supra*, three sentences varying in length were imposed, without direction as to whether they were to be effective concurrently or consecutively. After the expiration of the longest sentence the prisoner sought release on *habeas corpus*, but the judge on his own motion, and from memory as here, entered orders making the sentences effective consecutively. This was held improper and the prisoner was discharged. Speaking through Circuit Judge Rudkin, the Circuit Court of Appeals for the Ninth Circuit said:

"In the case before us, after the expiration of the term, and after the expiration of the longest term of imprisonment imposed, without any minute of the clerk or any note of the judge, without any record evidence of any kind for its guidance, and without reciting any facts even tending to justify its action, the court below, of its own motion, extended the term of imprisonment from one year to two years and three months, . . . Our attention has not been called to a single case according any such power or authority to a court of criminal jurisdiction, and we have found none.

" 'But in no case to which our attention has been directed or which we have been able to discover has any court, by the entry of such an order, corrected a former judgment or sentence in a criminal cause by adding a fine or, in any way increasing the penalty denounced against the accused.' Smith v. District Court, 132 Iowa, 603, 109 N.W. 1085, 11 Ann.Cas. 296.

"See, also, Rutland v. State, 14 Ga. App. 746, 82 S.E. 293; State v. McBee, 10 Kan.App. 450, 61 P. 1093.

"We are not disposed to establish the precedent, for, in our opinion, it is better far that this appellant should escape the full penalty which the court intended to impose, than that the fate of every prisoner and the duration of every sentence should depend upon the recollection of the trial judge or the uncertainty of parol testimony for months and perhaps for years after the original sentence was pronounced and entered upon the records of the court. In the language of Mr. Justice Bradley, the court should not adopt a proceeding so questionable and hazardous. To do so is not to amend, but to create." [5 F.(2d) 6, at page 9].

The reference in the last sentence of the quotation was to United States v. Patterson, *supra*. There the defendant was sentenced to confinement "for the term of five (5) years upon each of the three indictments . . . said terms not to run concurrently; . . . " At the expiration of the first term the prisoner sought release on *habeas corpus*. The United States Circuit Court, District of New Jersey, speaking through Mr. Justice Bradley of the Supreme Court of the United States, sitting as circuit justice, held that the sentences were ambiguous and that the additional words as to non-concurrence were void because incapable of application, and in commenting upon the possibility of correcting them, said:

"If there were any way in which the district court could amend its judgment, the case might perhaps be different. But I see no way in which it could do so without passing a new sentence, and that it could not do now, after the term has passed, and after one term of imprisonment has been suffered. What right would the court have now to determine that the expired term was due to any particular indictment more than to either of the others?

"I have carefully read the able opinion of the supreme court of New Jersey in the case of Gibbs v. State, 45 N.J.Law, 379, 46 Am.Rep. 782, and agree to all that the court there says as to the right of a criminal court to extend its judgment and proceedings on the record in proper form, regardless of imperfections in the minutes of its clerk. But in the present case there are no materials in existence for altering the form of the judgment under consideration,—at

least nothing but what may rest in the bosom of the judge; and for him to resort to his memory at this day to alter the judgment would be to render a new judgment. It is unnecessary to say that the honorable judge of the district court would not adopt a proceeding so questionable and hazardous. The district attorney has supplied me with a certified copy, *literatim*, with all the erasures and interlineations of the rough minutes; but they exhibit nothing upon which the court could base any substantial alteration in the judgment as recorded." [29 F. 775, at page 779].

The prisoner was discharged.

 As stated above, this case is of first impression here. It is not necessary to go so far as the courts in the Puccinelli and Patterson Cases and discharge the appellant forthwith, for the Puccinelli Case was before the court on a writ of *habeas corpus* testing the legality of the prisoner's detention under the corrected sentences, and under such a writ he was entitled to release at once if the detention was illegal; and the Patterson Case was before the court on a writ of *habeas corpus* testing the legality of detention under uncorrected sentences which were ambiguous and therefore legally operative concurrently, and again, under such a writ, the prisoner was entitled to discharge forthwith if the detention was illegal. But the instant criminal cases are here not on a writ of *habeas corpus* but on appeal from the orders correcting the record. And we do not feel bound to go so far as to rule with the courts in the Puccinelli and Patterson Cases, that a record may not be corrected upon parol evidence or that there cannot be correction after the term. But we are not willing to set a precedent validating the procedure below. We are of the view, to use the phrase of the Patterson Case, that there should be "materials in existence for altering the form of the judgment," and by materials we mean legal materials, that is to say, materials arrived at under the usual legal safeguards in respect of the ascertainment of facts. There should be, in a proceeding to correct a record of sentence alleged to be erroneous, in the absence of clear stipulation or admission by the affected party as to the original fact, a judicial determination thereof. And where recourse to the memory of the justice who imposed the sentence is necessary to prove the fact, he should be heard as witness, but not as judge and witness both. We do not rule, as do, apparently, the Puccinelli and Patterson Cases, that there can be no recourse to his memory. Numberless facts are established in both civil and criminal trials upon the basis of memory. But memory should be testified to, not merely recited, and of especial importance is this in a criminal case where liberty is at stake. If there are written materials such as will refresh or confirm recollection, or other written materials, they too should be placed in evidence in the usual manner. The party moving to correct the record should have the burden of proof. The party opposing correction of the record should have the usual rights of inspection and cross-examination and proof.

The authorities especially relied upon by the Government, In re Wight, Rupinski v. United States, Gonzales v. Cunningham, and Gagnon v. United States, all cited *supra*, we follow, as above pointed out, in so far as they recognize the power of a court to correct its record to show the truth, and its power to do this even though the term has passed. But those cases are not determinative of the instant case, because of distinctions to be taken. In Re Wight there was no objection to the sitting of the court in judgment upon its own recollection, and no point was made in the case that the materials bearing upon the fact to which the record was made to conform were not sufficient or were not properly evidenced. Moreover, in that case the Supreme Court, speaking through Mr. Justice Miller, quoted, from Bilansky v. State of Minnesota, 3 Minn. 427 (Gil. 313), the following—which it characterized as "the true rule on this subject": "While we should go as far as any court in reprobating a rule to place the proceedings of a court almost entirely at the mercy of the subordinate officials thereof, *we should be scrupulously careful in adopting any rule which would tend to destroy the sanctity or lessen the verity of the records.* And while we admit the power to amend a record after the term has passed in which the record was made up, *we deprecate the exercise of the power in any case where there was the least room for doubt about the facts upon which the amendment was sought to be made. . . .* But when the facts stand undisputed, *and the objection is based upon the technical point alone that the term is passed at which the record was made up,* it would be doing violence to the spirit which pervades the administration of justice in the present age to sustain it. It is our opinion that this power, of necessity, exists in the

District Court, and that its exercise must in a great measure be governed by the facts of each case." [Italics supplied] [134 U.S. 136, at page 145] 10 S.Ct. 487, 33 L.Ed. 865. We think it cannot safely be said in the instant case, in view of the state of the record and the manner of conducting the hearing, that there was not "the least room for doubt about the facts upon which the amendment was sought to be made." In Rupinski v. United States, there was a written basis for the correction of the record. The clerk's blotter, the book of original entry, indicated that one count of an indictment had been dismissed; the journal of the court, through an error on the part of the clerk, recited the dismissal of another. In Gonzales v. Cunningham, correction of the record was made "from evidence adduced, the recollection of the presiding judge, and *certain notes and memoranda deposited with the clerk in pursuance of law, . . .*"[8] Gagnon v. United States, in its discussion through Mr. Justice Brown of the power of a court to correct its record, recognized the need of objective data or evidence as a basis for the correction:

"In such cases *there is often a memorandum of some kind entered upon the calendar, or found in the files,* and there is no impropriety in ascertaining the fact even by parol evidence, and supplying the missing portion of the records." [Italics supplied] [193 U.S. 451, at page 458], 24 S.Ct. 510, 48 L.Ed. 745.

We think that in the manner of conduct of the proceedings for correction of the record in the instant case there was, in the legal sense, denial of fair hearing. But we think that the just and lawful disposition of the appeal in protection of the rights of both the appellant and the Government does not, for the reasons above set forth, require an immediate discharge of the appellant, but does require a rehearing of the motion and rule. This should be had before a justice other than the one who imposed the sentences sought to be corrected. At this hearing the Government as the moving party will have the burden of proof, and the advantage of such evidence, parol or documentary, including the testimony of the justice who imposed the sentences, as may be competent and material to establish what they were as uttered. The defendant will be accorded the right of inspection, cross-examination, and proof in his own behalf.

Such a proceeding is equitable in nature, and if the case comes here again there should be findings of fact, conclusions of law, decree, and a statement of the evidence.

In No. 6851 the order of the trial court overruling the demurrer and discharging the writ of *habeas corpus* is

Affirmed.

In cases Nos. 6824–6825–6826 the orders of the court correcting the record are

. Reversed and the case remanded for further proceedings in accordance with this opinion.

### On Petition for Rehearing.

Leslie C. Garnett, U. S. Atty., Allen J. Krouse and Irvin Goldstein, Asst. U. S. Attys., all of Washington, D. C., for appellee-petitioner.*

Albert A. Stern and Albert Lyman, both of Washington, D. C., for appellant-respondent.*

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

The petition for rehearing and an "Agreed Statement of Facts to Constitute Part of the Record . . ." in this court, filed in connection with the petition for rehearing, urge the following points:

1. It is asserted that the opinion leaves uncertain whether the criminal cases were reversed:

". . . because of the lack of authority in the trial Justice to correct this record, or because the Court is of opinion that it appears from the record that the trial Justice who entered the order of correction did it upon a lack of evidence supporting the order. In other words, assuming that the record had come to this Court in the form which it now suggests, namely, findings of fact, conclusions of law, decree and a statement of the evidence, would the single fact that the Judge who imposed the sentence, was the one who undertook to correct the judgments, require this Court to reverse the case?

. . .

\* \* \*

"In the last analysis, as we interpret the decision here, the Court holds that a Judge who imposes a sentence which

---

[8] Italics supplied.

\* For convenience we will continue to refer to the Government as appellee and to Downey as appellant.

is erroneously recorded by his clerk is disqualified to correct the clerk's error."

It is then argued:

"The practical result will be far-reaching. First, it places upon the trial Judge's brethren of the Bench at least an unenviable burden to determine not only his accuracy but his veracity, and to weigh the relative merits of his testimony and that of convicted criminals. Second, it requires the trial Judge to testify as to his official action, and subjects him to being cross-examined by counsel for criminals convicted in his Court and sentenced by him. . . ."

We did not rule as above contended. We ruled in this aspect of the case:

"But we are not willing to set a precedent validating the procedure below. We are of the view, to use the phrase of the Patterson Case, that there should be 'materials in existence for altering the form of the judgment,' and by materials we mean legal materials, that is to say, materials arrived at under the usual legal safeguards in respect of the ascertainment of facts. There should be, in a proceeding to correct a record of sentence alleged to be erroneous, in the absence of clear stipulation or admission by the affected party as to the original fact, a judicial determination thereof. And where recourse to the memory of the justice who imposed the sentence is necessary to prove the fact, he should be heard as witness, but not as judge and witness both. We do not rule, as do, apparently, the Puccinelli and Patterson Cases, that there can be no recourse to his memory. Numberless facts are established in both civil and criminal trials upon the basis of memory. But memory should be testified to, not merely recited, and of especial importance is this in a criminal case where liberty is at stake. If there are written materials such as will refresh or confirm recollection, or other written materials, they too should be placed in evidence in the usual manner. The party moving to correct the record should have the burden of proof. The party opposing correction of the record should have the usual rights of inspection and cross-examination and proof."

The assertedly untoward consequences of requiring a judge to be a witness as to his official action are apparently intended to be urged also against the actual ruling of the court as above set forth. In such respect they are, we think, not sound. A practice of prompt entry by the court clerk of a judge's orders, and of prompt scrutiny by the judge of such entries, will guard against all but occasional error. If, in the event of such error, the correction of the record involves determination of a dispute of fact as to what the uttered, as distinguished from the entered, order of a judge was, and if that question must be determined by the memory of the judge alone, or by recourse to his files, or by both, there is in our view no proper reason why he should not be called upon to testify like any other witness, or why the contents of his files should not be subject to introduction in evidence like any other paper. Exemption of a judge and his files from the usual processes of the law which safeguard the ascertainment of facts, especially in such a situation as the instant one, wherein correct determination of the fact is of crucial importance to the public interest and to individual liberty, is not warranted. The dignity of a judge's office will not be lessened by the judge's being witness only, rather than judge and witness both.

2. It is urged that the assertion in the appellant's petition for writ of *habeas corpus* that "in each case the Court directed that the sentence was 'to take effect from and including the date upon which it was imposed' . . ." is a mere conclusion of the pleader and cannot override the recital in the memorandum of the trial judge that the fact that the sentences originally pronounced were consecutive "is not disputed." It is said that this assertion in the appellant's petition is merely "the language of the insertion by the Clerk in the sentence imposed in each case." It is not such exactly. The language in the docket entries and minutes was, "to take effect from and including this date." But even if the assertion in the appellant's petition was exactly the same as this, it might well also be the language which the judge used in imposing the sentences. While the pleader might perhaps have more fully alleged the language of the judge, we think the pleading is not so clearly conclusional that it must be disregarded. It purports to be a quotation of the judge's utterance; it speaks of "imposed" sentences, rather than of "entered" sentences. It is, we think, in effect an allegation of ultimate fact. We did not assume to say in our opinion that it was perfectly clear from the record that there was a dispute of fact as to what the ut-

tered sentences were. On that subject the record is far from satisfactory. But we discussed this topic, with sufficient pains, we think, to indicate, and we are still of the view, that on the whole of the record it was fair to say that there was an issue of fact. Note that at the close of our discussion of this topic we said:

"We think, moreover, that it appears from the memorandum that the determination of the trial justice that the record should be corrected was not made upon mere absence, if there was such, of dispute as to the form of the sentences as originally uttered, or upon mere absence, if there was such, of dispute as to the justice's recollection. It was made also upon the basis of his recollection and upon circumstances and letters referred to which, as the justice indicated, originally fixed, and at the time of the hearing confirmed, his recollection. Certainly there was a contest over the proposed correction of the record, and there was an objection to this justice's sitting on that contest."

If there was no dispute that the sentences as uttered were consecutive rather than concurrent, it is not clear why the trial judge felt bound to determine the fact. Why did he not take it as stipulated and determine only an issue of law as to the power of the judge to correct the record to conform to an undisputed fact? We repeat that we in no manner question the fairness of the trial judge. As we stated in the opinion, "The memorandum of the trial justice clearly evidences his own feeling of responsibility in the determination of the legal and factual issues, and no question is raised in the brief of appellant as to his fairness, and there is no such question." But we think he was in error in concluding that there was no issue of fact.

 Issues are determined not by the recitals of a trial judge in a memorandum, but by pleadings. And although this criticized pleading was in the *habeas corpus* case, the appellant is entitled to rely upon it because, as we point out at the outset of the opinion:

"Hearing on the appellant's demurrer in the *habeas corpus* case and on the motion of the Government to correct the record in the three criminal cases was had before the same justice in the trial court. Although there are two records, one in the *habeas corpus* case, and another in the three criminal cases combined, all four cases were pre-

sented together on appeal under one brief on the part of each party, and as if there were but one record."

We think the issues were determined, in view of the manner of dealing with the four cases as one, by the pleadings in all of the cases, and that the trial judge could not, and that we cannot, treat the *habeas corpus* pleadings as separate and refuse the appellant recourse to them. We think it would be improper to deny to the appellant the benefit of his allegations in the *habeas corpus* case.

 3. It is asserted that there was no burden upon the appellee to settle and file a bill of exceptions, and that since none was settled and filed by the appellant it is our duty to presume that the findings of the trial court were supported by evidence. Reliance is had upon McCarty v. United States (C.C.A.) 101 F. 113; Katz v. United States (C.C.A.) 273 F. 157, 159; Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861; and McDonald v. Maxwell, 55 App.D.C. 375, 6 F.(2d) 678, reversed on other grounds, 274 U.S. 91, 47 S.Ct. 497, 71 L.Ed. 942, 55 A.L.R. 705. These cases state a well settled rule, but we think it not determinative of the duty of the court in this situation. The cases cited do not involve, and the rule is not apt for, situations where, as here, in our view, it appears from the record of the cases, including the orders and memorandum of the trial judge, that there was, in the legal sense of the term, no hearing, that the judge sat as judge and witness both, that there was no other witness, that no evidence was in the usual manner introduced. There was nothing for the appellant to embody in a bill of exceptions.

 4. It is urged that no exception was taken to the action of the chief justice in denying the motion for reassignment of the cases. It was not the denial of this motion as such which constituted the essential error. We did not rule that the mere assignment of the cases to Judge Proctor was error. It is not shown that at the time of the assignment it was made to appear that Judge Proctor would act as both judge and witness. The essential error was that of the trial judge in acting as both judge and witness on a dispute of fact. That error is apparent from the record, including the memorandum. As we pointed out in the opinion, exceptions are not necessary for the review of errors apparent upon the record. Nalle v. Oyster, 230 U.S. 165, 33 S.Ct. 1043, 57 L.Ed. 1439.

It is further urged that preliminary to stating his conclusions, the trial justice "made a statement in open court substantially as contained in his memorandum filed September 19, 1936, . . . to which statements of fact there were no objections or exceptions by the defendant present in court or by his counsel." Just what is intended here is not clear. If it is intended to urge that no objection was made and no exception taken during the course of the judge's oral statement to his acting as both judge and witness on a dispute of fact, that error, as we have just pointed out, is apparent from the record. If it is intended to urge that by omitting to make objection or take exception to a statement of the judge, when orally made, that there was no dispute of fact, the appellant waived determination of the issue of fact made by the pleadings, or admitted correctness of the judge's statements, then we think the point is not well taken. Silence of the appellant or his counsel during the course of what was in the nature of an oral opinion by the judge was not, in our view, a waiver of the determination of the issues made by the pleadings, or an admission.

5. It is made to appear in the "Agreed Statement of Facts to Constitute Part of the Record . . ." that:

" . . . the Court produced at the trial a letter from the defendant Downey, dated April 8, 1932, and read therefrom as follows: 'On March 24th, 1932, I was sentenced in your court to a term of 12 years, three four year consecutive sentences.' The Court further produced a letter from the mother of the defendant, dated March 31, 1932, containing these words, 'now please won't you change the three four year sentences, which run consecutive, to concurrently or even two of them to concurrently.' The Court further produced a letter from the father of the defendant, dated June 20, 1932, in which appears this passage concerning the son, 'At the time he was before you he received three four year sentences to run consecutive.' "

These were three of the four letters referred to in the judge's memorandum. All of them were apparently relied upon by the judge not to refresh his recollection but to confirm it. He said in his memorandum, "My recollection *was fixed* and *is confirmed* by very strong circumstances." (Italics supplied.) He then referred to the defendant's criminal record, and then to the letters, including the three above referred to and a fourth purporting to be from an aunt of the defendant. Reliance upon the letters as confirmatory of a fixed recollection was reliance upon the truth of their contents, and a mere reading from them or reference to their contents was not a proper evidential use of the letters. They should have been identified and submitted to inspection and offered in evidence in the usual manner and thus subjected to possible objection as to their competency. Even if used merely to refresh recollection they should have been submitted to inspection.

6. The "Agreed Statement of Facts to Constitute Part of the Record . . ." omits any reference to the *habeas corpus* proceeding, in which the appellant pleaded, as above pointed out, that, "in each case the Court directed that the sentence was 'to take effect from and including the date upon which it was imposed'. . . ." As said above, we think this *habeas corpus* case and the pleading therein cannot be disregarded.

Upon careful consideration of the petition for rehearing we see no reason for granting the same, and no proper objection to the disposition of the case which we made, requiring the motion and rule to be reheard below before a judge other than the one who imposed the sentences, the record of which it is sought to correct, and this not because the judge was *ipso facto* disqualified, but because in his memory and files alone lay the answer to a dispute of fact, in respect of which he ought not act as both judge and witness. We remain of the view that this is a just and lawful disposition of the appeal in the protection of the rights of both the appellant and the Government.

The petition for rehearing in this court is therefore

Denied.