## GAGNON *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 163. Argued February 29, 1904.—Decided March 21, 1904.

The inherent power which exists in a court to amend its records, and correct mistakes and supply defects and omissions therein, is not a power to create a new record but presupposes an existing record susceptible of correction or amendment.

An order, entered *nunc pro tunc* thirty-three years after an unrecorded judgment naturalizing an alien is alleged to have been rendered, may be attacked collaterally on the ground that the court had no jurisdiction to enter such an order, when no entry or memorandum appears in the record or files at the time alleged for the original entry of the judgment.

In the absence of jurisdiction to make such an order, the fact that notice of the application therefor was given to the Attorney General does not give the court jurisdiction.

THIS was a petition filed in the Court of Claims in 1894 and amended in 1902, to recover the value of one-half of certain property taken in 1866 from the firm of which the petitioner was a member by Indians then in amity with the United States.

The facts found in the case were substantially as follows: Charles Gagnon was a British subject. In March, 1858, he declared before the District Court of Woodbury County, Iowa, his intention to become a citizen of the United States. He

alleged that in 1863 he was admitted by the District Court of Richardson County, in the Territory of Nebraska, as a citizen of the United States, but no entry of this fact appeared in the records of that court for the year 1863.

It appeared Hosford & Gagnon, under which firm name they traded, owned horses and cattle of the aggregate value of $15,500 and in 1866, without just cause or provocation on their part, Indians belonging to the defendant tribes, then in amity with the United States, took them away. Hosford filed his claim for one-half of the amount and obtained judgment, which has been satisfied. Gagnon's claim was for the remaining half.

It further appeared that in the prosecution of his claim Gagnon failed to produce his certificate of naturalization, or a duly authenticated copy thereof. To meet the requirements of the law, providing that only citizens of the United States can recover under the Indian Depredation Act, Gagnon relied exclusively on a record of the District Court for the first judicial district of the State of Nebraska, (successor of the District Court of the Territory,) purporting to enter *nunc pro tunc* a judgment of naturalization of the territorial court as of the date of September 25, 1863.

No paper, memorandum or entry of any kind was found in the records of the court tending to show that a certificate of naturalization had been issued to Gagnon in that year. It also appeared that the persons who held the offices of judge and clerk of the territorial court in 1863 were both dead.

The record of the state court recited that it had been made to appear "by competent evidence" that the alleged application for naturalization had been granted by the territorial court, but that the "judgment of naturalization was never recorded, and if recorded the record is lost and cannot be found in the records of this court, and it being legal and proper that said record should be supplied, and this court being willing that said error and omission be corrected, it is ordered and adjudged that said judgment so rendered by this court at its

September term, 1863, be entered at large on the journal of this court as of the date when it should have been entered, to wit, on the 25th day of September, 1863, and that the clerk issue to the said. Charles Gagnon the proper certificate of naturalization," etc.

It further appeared that on March 19, 1897, Gagnon's attorneys wrote the Attorney General that application would be made to the District Court of Richardson County, Nebraska, on March 29, 1897, "for restoration of certain lost records relative to the naturalization of said Gagnon."

Upon the facts thus found the Court of Claims decided that Gagnon was not a citizen of the United States at the time the depredation was committed, and the petition was dismissed. 38 C. Cl. 10. Thereupon an appeal was taken to this court.

Mr. George A. King and Mr. William E. Harvey, with whom Mr. William B. King was on the brief, for appellant:

This court has decided where the claims of partners depend upon a difference of personal status between the members of the partnership they can be severally prosecuted by each partner for his separate interest. United States v. Burns, 12 Wall. 246, 254.

Immediately upon the admission of Nebraska as a State the legislature passed the act of June 15, 1867, Laws, 1867, p. 58, making the District Courts of the State successors to the District Courts of the Territory, and see § 905, Rev. Stat.

While in some of the older jurisdictions the practice has grown up of requiring written applications for naturalization, there was no statute requiring it when this claimant was naturalized in 1863.

It has been held since the earliest times that naturalization proceedings are conclusive where they were had in a court of competent jurisdiction. Spratt v. Spratt, 4 Pet. 393, 407; People v. Rose, 30 Barb. 588, and cases cited on p. 604; People v. McGowan, 77 Illinois, 644, and cases cited on p. 646; State v. Hoeflinger, 35 Wisconsin, 393, 400; United States v. Gleason,

78 Fed. Rep. 396; *S. C.*, 90 Fed. Rep. 778; *Campbell* v. *Gordon*, 6 Cranch, 176; *Ex parte Cregg*, 2 Curt. 98; Fed. Cas. No. 3380. For the conclusive effect everywhere of judgments affecting the status of persons, *Hilton* v. *Guyot*, 159 U. S. 113, 167. See also *State* v. *MacDonald*, 24 Minnesota, 48; *In re Christern*, 11 J. & S. 523; *In re Coleman*, 15 Blatch. 406; 6 Fed. Cas. No. 2980.

The Court of Claims undertook to pass upon the validity of the proceedings in the District Court, in a collateral proceeding, and upon evidence *aliunde*, but the validity of a judicial record cannot be questioned by a court not sitting in review, except upon the ground that the court lacked jurisdiction. *Voorhees* v. *Bank of the United States*, 10 Pet. 449, 474; *Cooper* v. *Reynolds*, 10 Wall. 308, 315; *Robinson* v. *Fair*, 128 U. S. 53, and cases cited on p. 86; *United States* v. *Arredondo*, 6 Pet. 691, 709; *Rhode Island* v. *Massachusetts*, 12 Pet. 657, 718; *Ex parte Watkins*, 7 Pet. 568, 572.

If the record was improperly supplied it was not a matter of usurpation of jurisdiction but error. The Court of Claims has no jurisdiction to correct error of a state court, and least of all to correct it upon evidence *aliunde*.

The record of the naturalization of the claimant in the district court of the Territory as certified by the clerk of the district court of the first judicial district of the State, successor to the territorial court, imports verity. That court is sole custodian of its own records. The record, no matter when made, or no matter after what distance of years it was supplied, imports absolute verity and is binding upon all other courts within the United States.

The absolutely binding character of a judicial record and the extent to which it imports absolute verity are principles elementary in the law. Art. IV, § 1, Const. U. S.

Whether it be a question of the power of the court to supply a record of proceedings unrecorded by the clerk, or to supply a lost record, the authorities are equally clear. The leading case in this court is *In re Wight*, 134 U. S. 136. See also *Gon-*

*zales* v. *Cunningham,* 164 U. S. 612, 623; *United States* v. *Vigil,* 10 Wall. 423; *Lincoln Nat. Bank* v. *Perry,* 66 Fed. Rep. 887; *Blythe* v. *Hinckley,* 84 Fed. Rep. 244; *Fuller* v. *Stebbins,* 49 Iowa, 377; *Kaufman* v. *Shain,* 111 California, 16, and cases cited on p. 19; *Balch* v. *Shaw,* 7 Cush. 282; *Frink* v. *Frink,* 43 N. H. 508, and cases cited on p. 514; *Borrego* v. *Territory,* 8 N. M. 446, 491; *S. C.,* 46 Pac. Rep. 349, 362, and cases cited; *State* v. *Major,* 38 La. Ann. 642; *Hershy* v. *Baer,* 45 Arkansas, 240; *State* v. *King,* 5 Iredell (27 N. Car.), 203; *Parsons* v. *McBride,* 49 N. Car. (4 Jones's Law) 99; *Perry* v. *Adams,* 83 N. Car. 266; *Taylor* v. *McElrath,* 35 Alabama, 330, and cases cited on p. 332; *Souvais* v. *Leavitt,* 53 Michigan, 577; *Van Etten* v. *Test,* 49 Nebraska, 725.

In *In re Wight,* 134 U. S. 136, this court in a criminal case sanctioned an order supplying the record at a subsequent term. If such an amendment can be made at one term later no limit can be drawn upon the exercise of the power. In *United States* v. *Vigil,* 10 Wall. 423, a record supplied after two years was held good. In *Balch* v. *Shaw,* 7 Cush. 282, 284, the correction was made fourteen years after the time the proceedings took place.

In *Rugg* v. *Parker,* 7 Gray, 172, a record was made *nunc pro tunc* after 20 years; in *Lawrence* v. *Richmond,* 1 J. & W. 241, after 23 years; in *Taylor* v. *McElrath,* 35 Alabama, 330, after 20 years; in *Parsons* v. *McBride,* 49 N. Car. (4 Jones's Law) 99, after 36 years.

The cases cited show that each court must necessarily be the judge of what it has decided and adjudged and when it orders an amendment of the record the presumption of other courts must necessarily be, that it does not undertake to order its clerk to record what it never had decided. *Sprague* v. *Litherberry,* 4 McL. 442, 449; 22 Fed. Cases, No. 13,251; *Inhabitants of Limerick,* 18 Maine, 187.

In Indiana the rule is stricter than in other jurisdictions. *Schoonover* v. *Reed,* 65 Indiana, 313, 316, and the rulings are in conflict with those cited including *In re Wight,* 134 U. S. 136.

It is suggested in the opinion below that there has usually been shown to be a cause pending on which to found an order restoring the record. But none of the cases makes any distinction of this sort, or limits the power to those in which there is a pending cause. In *United States* v. *Hill,* 120 U. S. 169, it was held that a proceeding for naturalization is not a "cause" in the strict sense of the term but a special and peculiar case of which the courts have jurisdiction, where only the party asking for the right or privilege is before the court. And see *Ex parte Watkins,* 3 Pet. 193, 207.

*Mr. Assistant Attorney General Thompson,* with whom *Mr. Assistant Attorney Peyton* was on the brief, for the United States.

MR. JUSTICE BROWN delivered the opinion of the court.

This case raises the simple question whether thirty-three years after a judgment naturalizing an alien is alleged to have been rendered but not recorded, or if recorded, the record lost, a common law court has jurisdiction to enter such judgment of naturalization *nunc pro tunc,* when no entry or memorandum appeared upon the record or files at the time the original judgment is supposed to have been rendered. If there be no jurisdiction to enter such judgment, it may be attacked collaterally.

The power to amend its records, to correct mistakes of the clerk or other officer of the court, inadvertencies of counsel, or to supply defects or omissions in the record, even after the lapse of the term, is inherent in courts of justice, and was recognized by this court in *In re Wight,* 134 U. S. 136; *Gonzales* v. *Cunningham,* 164 U. S. 612, 623, and *United States* v. *Vigil,* 10 Wall. 423. It is also conferred upon courts of the United States by Rev. Stat. secs. 899, 900 and 901. This power, however, must be distinguished from that discussed by the court in *Bronson* v. *Schulten,* 104 U. S. 410, wherein we held that the authority of the court to set aside or modify an exist-

ing judgment or order ceased with the expiration of the term, and from that time all final judgments and decrees passed beyond its control, and that if such errors existed they could only be corrected by writ of error or appeal to a superior tribunal. An exception was there made of certain mistakes of fact not put in issue or passed upon, such as that a party died before judgment, or was a married woman, or was an infant and no guardian appeared or was appointed, or that there was error in the process through the default of the clerk. In the Federal courts the power to amend is given in general language in the final clause of Rev. Stat. section 954, which declares that such courts "may at any time permit either of the parties to amend any defect in the process or pleadings, upon such conditions as it shall, in its discretion and by its rules, prescribe." As above indicated, however, this power has been restricted to amendments made during the progress of the case, or at least during the continuance of the term in which the judgment is rendered.

This power to amend, too, must not be confounded with the power to create. It presupposes an existing record, which is defective by reason of some clerical error or mistake, or the omission or some entry which should have been made during the progress of the case, or by the loss of some document originally filed therein. The difference between creating and amending a record is analogous to that between the construction and repair of a piece of personal property. If a house or vessel, for instance, be burned or otherwise lost, it can only be rebuilt, and the word "repair" is wholly inapplicable to its subsequent reconstruction. The word "repair," as the word "amend," contemplates an existing structure which has become imperfect by reason of the action of the elements, or otherwise. In the cases of vessels particularly, this distinction is one which cannot be ignored, as it lies at the basis of an important diversity of jurisdiction between the common law and maritime courts.

The power to recreate a record, no evidence of which exists,

has been the subject of much discussion in the courts, and the weight of authority is decidedly against the existence of such power. We have examined a large number of authorities upon this point, and while they do not altogether harmonize in their conclusions, the practice in some States being much more rigid than in others, we have found none which supports the contention that a record may be created to take the place of one of which no written memorandum was made or entered at the time the original judgment was supposed to have been rendered. The following cases contain instructive discussions of the principles involved, but an epitome of them would subserve no useful purpose. *Bilansky* v. *Minnesota,* 3 Minnesota, 427; *Schoonover* v. *Reed,* 65 Indiana, 313; *Smith* v. *Hood & Co.,* 25 Pa. St. 218; *Missouri* v. *Primm,* 61 Missouri, 166; *Brown* v. *Coward,* 3 Hill (S. Car.), 4; *Lynch* v. *Reynolds,* 69 Kentucky, 547; *Coughran* v. *Gutcheus,* 18 Illinois, 390; *Frink* v. *Frink,* 43 N. H. 508; *Rugg* v. *Parker,* 7 Gray, 172; *Balch* v. *Shaw,* 7 Cush. 282.

The power of the court to amend existing records is also considered at length in the following cases from the Federal courts: *Tilghman* v. *Werk,* 39 Fed. Rep. 680; *Whiting* v. *Equitable Life,* 60 Fed. Rep. 197, 200; *Odell* v. *Reynolds,* 70 Fed. Rep. 656, 659; *Blythe* v. *Hinckley,* 84 Fed. Rep. 228, 244.

It may be gathered from these cases that, if a memorandum be entered upon the calendar that a certain document has been filed, such document, if lost, may be supplied by a copy in the hands of counsel; or where a judgment or order has been entered upon the calendar, which does not appear upon the journal, the court may order a new one to be entered *nunc pro tunc.* In such cases there is often a memorandum of some kind entered upon the calendar, or found in the files, and there is no impropriety in ascertaining the fact even by parol evidence, and supplying the missing portion of the records. But the exercise of a power to recreate a record where no memorandum whatever exists of such record is evidently a dangerous one, and, although such power may have been occasionally

given by the legislature in cases of overwhelming necessity, as, for instance, by the "lost record act" passed by the general assembly of Illinois after the great fire in Chicago in 1871, (Laws of Illinois, 1871–2, p. 650;) such power has not been hitherto supposed to be inherent in courts of general jurisdiction. As the evidence upon which such restoration is made cannot be inquired into, if the jurisdiction to recreate the record exists, it might well happen that, upon the testimony of a single interested witness, the court would order a new record to be entered after a lapse, as in this case, of over thirty years, and when the judge and clerk have both died, and there was no possibility of contradicting the testimony of such single witness.

Additional complications may also be properly referred to in this case in the fact that the declaration of intention was made before another court in another State, and that the territorial court which is alleged to have entered the judgment of naturalization had itself been abolished and a state court substituted in its place. Did the jurisdiction exist to make this order of naturalization, there is nothing to prevent any person from applying to any competent court for a similar judgment of naturalization, or even a judgment for damages, and to have the same entered *nunc pro tunc* as of any date it would be for his interest to have it rendered. It is true that in this case notice was given to the Attorney General by the petitioner of his proposed application to the court for the restoration of "certain lost records," but if the jurisdiction to enter this judgment *nunc pro tunc* did not exist, it could not be given by this notice.

As there was no competent evidence of the citizenship of the petitioner, there was no error in the action of the court below, and its judgment is therefore

*Affirmed.*