**ALLIED MATERIALS CORPORATION,**
Plaintiff-Appellee,

v.

**SUPERIOR PRODUCTS COMPANY,**
**INC., Defendant-Appellant.**

No. 78–1597.

United States Court of Appeals,
Tenth Circuit.

Argued March 11, 1980.
Decided April 17, 1980.

A. P. Murrah, Jr. of Andrews, Mosburg, Davis, Elam, Legg, Bixler, Inc., Oklahoma City, Okl., for defendant-appellant.

Jerry J. Dunlap, Oklahoma City, Okl. (Jerry J. Dunlap, II, Oklahoma City, Okl., with him on brief), of Dunlap, Codding & McCarthy, Oklahoma City, Okl., for plaintiff-appellee.

Before HOLLOWAY, DOYLE and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

The parties to this appeal entered into a consent decree in federal court that enjoins Superior Products Company, Inc. (Superior) from making any false or misleading representation concerning the business or products of Allied Materials Corporation (Allied). Subsequently, Allied contracted to provide a joint sealant compound to be used in construction at Stapleton airport in Denver. The president of Superior wrote letters to the City of Denver stating the sealant provided by Allied was defective and did not contain the required chemical constituents. Allied then sought a contempt citation for breach of the consent decree.

At the close of the contempt hearing the district court announced that it found Superior guilty of civil contempt for making false statements about the sealant and ordered it to pay Allied $1,200 compensatory damages. The judge asked Allied's counsel to prepare a formal judgment "in accordance with the finding that the Court dictated into the record." The next day the judge informed the parties by letter that he had inadvertently declared the award to be $1,200 when he had intended to award $12,-000, stating that an order should be prepared by Allied's counsel "showing this inadvertence, and correcting the oral order" to the $12,000 figure. The contempt order subsequently entered reflected the higher amount.

Superior contests only the damage award on appeal and urges two grounds for reversal: (1) the trial court may not amend its findings sua sponte, and (2) a $12,000 compensatory damages award is not supported by the evidence.

I

Having made a decision and entered the judgment, a court cannot modify that decision without utilizing the procedures set out in Fed.R.Civ.P. 52(b), which provides for action only upon motion of a party. *See Virgin Islands v. Massac*, 277 F.2d 660 (3d Cir. 1960). But Fed.R.Civ.P. 60(a) provides "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative." The bound-

ary line demarcating the two rules is drawn, we believe, between what is erroneous because the thing spoken, written or recorded is *not what the person intended* to speak, write or record, and what is erroneous because the person later discovers that the thing said, written or recorded was *wrong.* The former comes within Rule 60(a); the latter does not. *See Kelley v. Bank Bldg. & Equip. Corp.*, 453 F.2d 774, 778 (10th Cir. 1972).

The instant situation is close factually to cases in which the jury made a mistake in returning the verdict. Correction has been allowed under Rule 60(a) in such cases. *See Myrtle v. Checker Taxi Co.*, 279 F.2d 930 (7th Cir. 1960) (one defendant assessed $1 and the other $1,000, but jury attempted to add first defendant's name to second form; judge concluded a joint verdict was intended and this was error of form, not substance); *Woodworkers Tool Works v. Byrne,* 191 F.2d 667 (9th Cir. 1951) (jury put $8,000 next to special damages and $1,000 next to general damages; court found this was clerical error because the figures had been transposed). *See also Bowles v. Branick*, 66 F.Supp. 557 (W.D.Mo.1946) (error in mathematical computation of damages is correctable).

█ We believe that Rule 60(a) is broad enough to encompass the instant case. Additionally, the power to amend its records to correct inadvertent mistakes is an inherent power of the court. *See American Trucking Ass'ns. v. Frisco Transp. Co.*, 358 U.S. 133, 145, 79 S.Ct. 170, 177, 3 L.Ed.2d 172 (1958); *Gagnon v. United States*, 193 U.S. 451, 24 S.Ct. 510, 48 L.Ed. 745 (1904). We do not regard this as a hard case on the facts; we are satisfied the original award was a misstatement. The judge made the change within twenty-four hours and before entry of judgment,[1] declaring then that it was an "inadvertence." The figure $1,200 is one zero removed from $12,000, and the evidence, as discussed hereafter, supports the view that the judge was thinking of $12,000.

1. *Cf. Blankenship v. Royalty Holding Co.*, 202 F.2d 77 (10th Cir. 1953) (modification not permitted two years after entry of judgment clear on its face).

## II

At the close of the hearing the trial court found an intentional violation of the consent order, but found Allied suffered "very little damage as a result of it."

[T]he only harm detrimental that I see that the Plaintiff has suffered was the cost of this litigation and Court finds from the evidence before me that $1200.00 [later corrected to $12,000.00] would adequately compensate that. That is the amount of the fine that Defendant is ordered to pay for their consummatious [sic] and willful violation of the consent decree entered herein . . .

Superior argues there is insufficient evidence in the record to support the finding that Allied's costs of litigation were $12,000.

The only evidence concerning the costs of litigation was the following testimony of John H. Caldwell, manager of the construction materials division of Allied:

Q. All right, sir. Now, would you tell the Court what it has cost Allied Materials Corporation as a result of this problem which has arisen at Stapleton Field?

A. Mr. Dunlap, I have no way of putting firm handle on it but I am estimating with the time of our staff at our Stroud Manufacturing Plant—

Mr. Murrah: I question whether or not he is qualified to answer that question.

The Court: Maybe he is not. Let me put another question and then Mr. Dunlap—how much actual cost and I'm talking about plane fares, if any, going out there and coming back to look at the project, how much has the Plaintiff here actually been out, attorney fees and whatever if you know?

A. Including attorney fees probably ten, $12,000.00.

The Court: Well, it is not fixed then, is it?

A. No, sir, I have no way of—

The Court: All right.

Q. (By Mr. Dunlap) The attorney fees up to a month ago were fixed, isn't that correct, Mr. Caldwell?

A. Yes, sir.

Q. And what do those amount to?

A. $7,000.00, I believe.

The Court: Now, he didn't ever answer your question, I interrupted. You may further pursue it if he does know the answer of how much it has cost.

Mr. Dunlap: Well, I understand from his answer to state that he does not in specific dollar figures.

The Court: That is what I understood him to say.

Mr. Dunlap: Except for the charges for the attorneys' fees and expenses.

■ A compensatory fine in a civil contempt suit "must of course be based upon evidence of complainant's actual loss." *United States v. United Mine Workers*, 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). In the absence of evidence showing the amount of the loss, any sum awarded by the court is speculative and therefore arbitrary. *Yanish v. Barber*, 232 F.2d 939, 944 (9th Cir. 1956). The court must have some basis for determining not only the amount, but the reasonableness of costs claimed. *Lichtenstein v. Lichtenstein*, 425 F.2d 1111, 1113–14 (3d Cir. 1970).

■ The proof here does not support the award of $12,000 compensatory damages. The only evidence on the matter is Caldwell's testimony that it "probably" was $10,000 to $12,000 and the acknowledgement, expressed in the record quoted above, that Caldwell did not know the costs in specific dollar figures, except for attorneys' fees already billed. Our careful search has revealed no case that comes close to upholding a judgment on such a sparse record. The only definite sum stated is the $7,000 paid in attorneys' fees, and as to that amount there is no direct documentation from which we may review its reasonableness. There is indirect support of its reasonableness, however. The size of the record, which consists of sixteen volumes and includes thirteen depositions taken in four different states, indicates a considerable expenditure of lawyers' time. This, taken together with the direct testimony that $7,000 was actually incurred, warrants an award of $7,000.

■ Superior urges us to modify the award to an amount the record will support rather than remand for a hearing, arguing that plaintiff should not have a second chance to put in evidence it failed to submit previously. In remittitur cases we generally give an option to the party to accept the reduction or to go back for a new trial on the damages issue. *See, e. g., R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749 (10th Cir. 1975); 6A Moore's Federal Practice ¶ 59.-05[3] (2d ed. 1979). We think this is the proper procedure in the present case. In a normal damages action a party may indeed waive the right to claim the loss of a certain amount by failing to submit evidence of the loss at trial. Award of costs of litigation in a civil contempt action, however, is based on different policy considerations.

In ordering the award of attorneys' fees for compensatory purposes in this [civil contempt] case, the court is merely seeking to insure that its original order is followed. Otherwise, the benefits afforded by that order might be diminished by the attorneys' fees necessarily expended in bringing an action to enforce that order violated by the disobedient parties.

*Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977).

■ The trial court here held that Superior violated the order of the court embodied in the consent decree, and Allied was entitled to compensation for its costs in the successful prosecution of the contempt action. Allied may now accept an award of $7,000, the amount sufficiently supported by the record, or it may choose to retry the costs issue. In the event of a rehearing, costs incurred in the instant appeal are not to be considered in any award of compensation. *See Lander v. Morton*, 518 F.2d 1084, 1088 (D.C.Cir.1975).

The judgment is affirmed in part and reversed in part. The case is remanded for further proceedings consistent herewith.