In re Robert P. COSTA and Rebecca
J. Costa, Debtors.

Robert P. COSTA and Rebecca
J. Costa, Plaintiffs,

v.

Peggyanne WELCH, individually and dba
Credit Bureau of Amador and Calaveras
Counties; Airola & Airola,' Attorneys;
Steven Airola, Esq.; and Wells Fargo
Bank, N.A., Defendants.

Bankruptcy No. 89–25188–C–7.
Adv. No. 93–2616.

United States Bankruptcy Court,
E.D. California.

Sept. 14, 1994.

H. Lee Horner, Jr., Horner & Horner, Sacramento, CA, for debtors/plaintiffs.

Mark E. Ellis, Murphy, Pearson, Bradley & Feeney, Sacramento, CA, for defendant Wells Fargo Bank, N.A.

Steven Airola, Airola & Airola, San Andreas, CA, for Airola & Airola and in pro. per.

## MEMORANDUM DECISION

CHRISTOPHER M. KLEIN, Bankruptcy Judge.

What is a law-abiding bank to do? It obeyed state law and froze $541 when served with a facially valid writ of execution. Now the debtor demands that the bank pay $10,-000 in punitive damages on the theory that honoring a writ of execution violated the bankruptcy discharge injunction with respect to a debt that the debtors had intentionally omitted from their bankruptcy schedules.

The procedure and remedies applicable in the unlisted creditor scenario need to be specified so that debtors, creditors, and those caught in the cross fire may understand their respective rights and obligations in the wake of recent decisions clarifying that the bankruptcy discharge does apply to some unlisted debts.

After surveying procedure and remedies, I conclude that a putative violation of the discharge injunction does not give rise to an implied private cause of action for damages and that damages are only available as a matter of the judicial discretion that applies in matters of civil contempt. Thus, the debtors' adversary proceeding seeking compensatory and punitive damages will be dismissed.

### FACTS [1]

At the time this chapter 7 bankruptcy case was filed, Robert Costa was an individually named defendant in a lawsuit by a credit bureau seeking to recover on an account stated. He knew about the claim, discussed it with counsel, and, with advice of counsel, elected to omit both the debt and the credi-

---

1. This is a summary of facts pertinent to this opinion. Formal findings of fact and conclu-sions of law have been entered separately.

tor from the schedules and lists filed pursuant to Bankruptcy Code § 521(1), 11 U.S.C. § 521(1).

Three weeks after the bankruptcy filing, and before the discharge was entered, the credit bureau obtained a $1,408 judgment in state court without knowledge that a bankruptcy case was pending.

Long after the bankruptcy case was closed, the credit bureau obtained a writ of execution for $1,762, reflecting the judgment amount plus costs and post-judgment interest, which the sheriff served upon Wells Fargo Bank ("bank"). In compliance with California statute, the bank informed the sheriff that it had deposit accounts in the name of the judgment debtor and a third party, and that it would await receipt of notice to pay from the levying officer. The bank froze the account balances, which totaled $541, in compliance with state law[2] and notified the account owners that it would hold the funds until all notice requirements concerning a third party had been met.

The debtor engaged new counsel who demanded that the bank and the credit bureau restore the funds immediately, insisting (incorrectly, as will be seen) that the Ninth Circuit's decision in *Beezley v. California Land Title Co. (In re Beezley),* 994 F.2d 1433 (9th Cir.1993), held that all debts of a debtor are discharged, whether or not scheduled. The response was (correctly) that until it could be determined that the case had been a no-asset case in which no deadline for filing

claims was set, the debt was not necessarily discharged and that dischargeability potentially needed to be adjudicated.

The case was reopened on the debtors' motion, without opposition, in order to permit them to attempt to enforce the discharge injunction. The debtors made no attempt to amend the schedules to list the omitted creditor.

The debtors filed this adversary proceeding premised on violation of the discharge injunction and requested general, special, and punitive damages from the credit bureau, its attorney, and the bank. Answers were filed. No motions were made to test the sufficiency of the pleadings. The credit bureau settled. Trial ensued against the remaining defendants.

Evidence was adduced that this was a no-asset case. None of the parties introduced evidence to establish whether the clerk of the court had set a deadline to file claims. The official file of the bankruptcy case, which should contain the pertinent papers, had not been retrieved from archives.

## I

Initially, there is the matter of the effect of the discharge on the omitted debt.

### A

The question here lies a step beyond the problem of whether a case should be reopened for the limited purpose of amending

---

**2.** In California, no payment pursuant to execution levy is permitted from a deposit account in the name of a person other than the judgment debtor until after that other person is given notice:

(c) In any case where a deposit account in the name of a person other than the judgment debtor, whether alone or together with the judgment debtor, is levied upon, the financial institution shall not pay to the levying officer the amount levied upon until being notified to do so by the levying officer. The levying officer may not require the financial institution to pay the amount levied upon until the expiration of 15 days after service of notice of levy on the third person.

Cal.Code Civ.Proc. § 700.160(c).

In the interim, the financial institution must freeze funds sufficient to pay the amount levied upon:

(c) During the time the execution lien is in effect, the financial institution shall not honor a *check or other order for the payment of money* drawn against, and shall not pay a withdrawal from, the deposit account that would reduce the deposit account to an amount less than the amount levied upon. For the purposes of this subdivision, in determining the amount of the deposit account, the financial institution shall not include the amount of items deposited to the credit of the deposit account that are in the process of being collected.

Cal.Code Civ.Proc. § 700.140(c).

schedules to list an omitted creditor. The Ninth Circuit's *Beezley* decision is an installment in that discussion and provides essential background to the dispute now at hand.

■ The confusion over amending schedules stems from a widespread failure to realize that the Bankruptcy Code does not require that a debt necessarily be scheduled in order to be discharged. Although the listing of a debt has lost the talismanic status it may have had under the former Bankruptcy Act, old habits die hard. After 1979, courts continued to receive motions for leave to reopen cases for the purpose of adding creditors to schedules, and some courts, including bankruptcy courts, assumed that amending the schedules made a difference.

The erroneous interpretation achieved some dignity when two courts of appeals assumed, without deciding, that adding an omitted creditor to the schedules after reopening the case would operate to discharge the omitted debt and then held that the dischargeability of debts before them depended upon whether there was a satisfactory explanation for the omission. *Rosinski v. Boyd (In re Rosinski)*, 759 F.2d 539, 542 (6th Cir.1985); *Stark v. St. Mary's Hospital (In re Stark)*, 717 F.2d 322, 323–24 (7th Cir. 1983).

■ These decisions perpetuated the confusion and stimulated a line of corrective bankruptcy court opinions that parsed the Bankruptcy Code to explain why the discharge encompasses unscheduled debts. The essential point is that amending the sched-

ules to add an omitted debt after the discharge is entered is legally irrelevant to whether the particular debt is discharged.

■ Generally, unlisted debts are discharged unless the creditor did not learn of the bankruptcy in time to file a timely proof of claim or, if the debts are nondischargeable under 11 U.S.C. §§ 523(a)(2), (4), or (6), a timely nondischargeability action under those subsections. 11 U.S.C. § 523(a)(3). In the special case of the so-called "no-asset, no-bar-date case" where there are no assets for the trustee to liquidate and where no deadline for filing proofs of claim is fixed, it is never untimely to file a proof of claim, with the result that all unscheduled debts (except section 523(a)(2), (4), and (6) debts) are discharged.

The views expressed in these corrective decisions have been so harmonious as to constitute more of a chorus than a debate. Ten leading cases are cited in the margin.[3] District courts have applied the same analysis in bankruptcy appeals.[4] Significantly, no recent decision holds that amending schedules belatedly is relevant to whether the debt is discharged.[5]

The first and only court of appeals decision squarely to face the question of whether a belated amendment of schedules is legally relevant to discharge in a no-asset, no-bar-date case is *Beezley* in which the Ninth Circuit held that it was not an abuse of discretion for a bankruptcy court to decline to reopen a closed case for the purpose of adding an omitted debt to the schedules. In a

---

**3.** *In re Anderson*, 72 B.R. 495 (Bankr.D.Minn. 1987) (Kressel, J.); *In re Karamitsos*, 88 B.R. 122 (Bankr.S.D.Tex.1988) (Mahoney, J.); *In re Padilla*, 84 B.R. 194 (Bankr.D.Colo.1987) (Brumbaugh, J.); *In re Mendiola*, 99 B.R. 864, 868 (Bankr.N.D.Ill.1989) (Barliant, J.); *In re Hunter*, 116 B.R. 3 (Bankr.D.D.C.1990) (Teel, J.); *In re Guzman*, 130 B.R. 489 (Bankr.W.D.Tex.1991) (L. Clark, J.); *In re Thibodeau*, 136 B.R. 7 (D.Mass. 1992) (Kenner, J.); *Peacock v. State Farm Mutual Auto. Ins. Co. (In re Peacock)*, 139 B.R. 421 (Bankr.E.D.Mich.1992) (Spector, J.); *American Credit Servs., Inc. v. Tucker (In re Tucker)*, 143 B.R. 330 (Bankr.W.D.N.Y.1992) (Ninfo, J.); *In re Stecklow*, 144 B.R. 314 (Bankr.D.Md.1992) (Mannes, J.).

**4.** *See Keever v. Tyler (In re Tyler)*, 139 B.R. 733 (D.Colo.1992); *American Standard Ins. Co. v. Bakehorn*, 147 B.R. 480 (N.D.Ind.1992).

**5.** If there is so much harmony, why bother to publish these decisions? The answer is, as discussed by the concurrence in *Beezley* described in the next footnote, there is a puzzling persistence of the false assumption that amending schedules matters. As noted above, this old habit is dying hard.

two-paragraph per curiam opinion that cites *Bakehorn, Stecklow, Tucker, Peacock, Thibodeau, Hunter,* and *Mendiola* with approval, the court reasoned that after a no-asset, no-bar-date case is closed, dischargeability is unaffected by scheduling: "If the omitted debt is of a type covered by 11 U.S.C. § 523(a)(3)(A), it has already been discharged pursuant to 11 U.S.C. § 727. If the debt is of a type covered by 11 U.S.C. § 523(a)(3)(B), it has not been discharged and is non-dischargeable." *Beezley,* 994 F.2d at 1434. A comprehensive concurring opinion explicated the ruling.[6]

In view of allegations of fraud in the transaction that gave rise to the underlying claim, the *Beezley* court declined to opine whether the particular debt in issue was discharged. As the bankruptcy court had not allowed the *Beezley* bankruptcy case to be reopened, the question of how the debtor and omitted creditor could vindicate their rights was left open. And that is the question that arises here.

### B

▮ The precise status of the discharge in this case is, surprisingly, still uncertain. The debtors, who in a proceeding to enforce the discharge injunction have the burden of demonstrating that the discharge applies to the debt in question, failed to adduce evidence establishing that the clerk of the court did not fix a bar date for filing claims.

Their evidence was limited to the docket entries preserved by the clerk of court, which reflect that it was a no-asset case but do not indicate whether the form of the notice that the clerk of the court sent to creditors was the one that fixes a bar date or the one that does not. In the absence of other reliable evidence of the content of the notice, it would be necessary to view the actual notice in the official case file that should have been retrieved from archives.

If this was a no-asset, no-bar-date case, then *Beezley* would apply, and the debt in question would be deemed to have been discharged at the time of the original discharge.[7] The discharge applies to all debts, listed or unlisted, except as expressly made nondischargeable. The nondischargeability provision applicable to unlisted debts is section 523(a)(3), which provides that debts not incurred by fraud (or other bad acts) are dischargeable if no bar date is fixed.

▮ If a bar date was fixed, then a different and more difficult issue would be posed.[8] Although the literal language of section 523(a)(3) would make the debt nondis-

---

**6.** The concurrence emphasizes that the bankruptcy court and the bankruptcy appellate panel had reached the right result for the wrong reason. It notes that neither of the lower courts had applied the reasoning of the per curiam opinion and the line of cases typified by *Mendiola* and *Peacock* in which the motive behind the omission is legally irrelevant in a no-asset, no-bar-date case. Instead, they had labored under the very error that *Mendiola* and *Peacock* sought to dispel and had treated the Seventh Circuit's *Stark* decision as authoritative when they inquired whether fraud or intentional design lay behind the omission, apparently thinking that they were adjudicating the dischargeability of Beezley's debt when addressing the motion to reopen. The remainder of the concurrence is a detailed critique of *Stark* in the context of no-asset, no-bar-date cases. *Beezley,* 994 F.2d at 1434–41.

**7.** The debt is not alleged to qualify for nondischargeability under section 523(a)(2), (4), or (6).

**8.** No-asset cases sometimes do have bar dates set. First, bar dates are fixed in all cases that start as asset cases, but wind up with no assets. Second, in cases that start as no-asset chapter 7 cases, the initial decision of whether to fix a bar date is a discretionary matter of sound administration by the clerk of the court who is permitted, but not required, to include in the notice of meeting of creditors issued pursuant to Federal Rule of Bankruptcy Procedure 2002(a)(1) a notice of no dividend when the schedules suggest there are no assets:

> (e) Notice of no Dividend. In a chapter 7 liquidation case, if it appears from the schedules that there are no assets from which a dividend can be paid, the notice of the meeting of creditors may include a statement to that effect; that it is unnecessary to file claims; and that if sufficient assets become available for the payment of a dividend, further notice will be given for the filing of claims.

Fed.R.Bankr.P. 2002(e).

Rule 2002(e) is merely a rule of administrative convenience to enable clerks of court to reduce unnecessary paperwork. The standard "appears from the schedules that there are no assets" is inherently fuzzy and is being applied by adminis-

chargeable, an equitable exception for innocent omissions has been recognized by some courts of appeals.[9] *Stone v. Caplan (In re Stone)*, 10 F.3d 285, 289–90 (5th Cir.1994); *Rosinski*, 759 F.2d at 541 (semble); *Stark*, 717 F.2d at 323–24 (semble).

The Ninth Circuit has not decided whether there is an innocent omission defense. Lower courts within the circuit are divided. *Compare Laczko v. Gentran, Inc. (In re Laczko)*, 37 B.R. 676, 678–79 (9th Cir. BAP 1984) (no defense), *and In re Corgiat*, 123 B.R. 388, 390–91 (Bankr.E.D.Cal.1991) (same), *with Homestate Ins. Brokers, Inc. v. Brosman (In re Brosman)*, 119 B.R. 212, 213–16 (Bankr.D.Alaska 1990) (recognizes defense). It is not appropriate for me to pass upon that question in this case unless and until the predicate facts are established by the parties.

This, then, was the dilemma that the bank faced. It was served with a writ of execution that was valid on its face. When told about the bankruptcy, it recognized that there was a bona fide question about whether the debt had been discharged and urged the parties to clarify the situation, especially whether a bar date had been set.

Debtors' counsel, rather than dig up the actual facts, blustered that he was "informed" that it was a no-asset, no-bar-date case to which the *Beezley* rationale applied and gloated that another financial institution had settled with one of his clients for $3,500 on the eve of trial in a similar situation. That response was insufficient to resolve the bank's dilemma about whether the discharge applied and whether the writ of execution was valid.

## II

The procedure and the remedies available in the omitted creditor situation permit a variety of options in bankruptcy and non-bankruptcy courts. The debtors eschewed three recognized avenues for relief.

## A

■ Their first alternative was to raise the discharge defensively, it being long-settled that discharge in bankruptcy is an affirmative defense to an action under state law to establish the personal liability of the debtor that may be raised and adjudicated in state court. *See, e.g., Mendiola*, 99 B.R. at 870.

■ The defense of discharge in bankruptcy has taken on the aura of a jurisdictional defense because the Bankruptcy Code provides that any judgment—past, present, or future—determining the personal liability of the debtor with respect to a debt discharged in the debtor's bankruptcy case is void, regardless of whether discharge of the debt is waived. 11 U.S.C. § 524(a)(1). It is not voidable. Rather, it is void.

■ When a writ of execution is issued by a state court pursuant to a void judgment, it is appropriate to move that court for an order declaring that the judgment was void. The debtors did file a document entitled "Notice Of Bankruptcy Dis-

---

trative personnel not trained in the law. It is ironic that legal consequences for unlisted creditors may turn on the choice that is made.

**9.** This is the correct view of the reopening decisions that have been cogently criticized for incorrectly making the circumstances surrounding omission of the debt pertinent to whether the schedules can be amended. Thus viewed, the Sixth and Seventh Circuits in *Rosinski* and *Stark* were saying that the respective debts should be discharged when they held that the schedules should be allowed to be amended because there were satisfactory explanations for the omission.

The problem with such decisions is not the recognition of an equitable exception to the statute that otherwise makes the debt nondischargeable (after all, that is part of what courts do). Rather, it is the misunderstanding of bankruptcy procedure that has them thinking that amending the schedules is the way to accomplish the end. The appropriate method to settle the innocent omission issue and its effect on the discharge is a declaratory judgment action filed as an adversary proceeding seeking a determination under section 523(a)(3)(A) of whether the debt is discharged. Fed.R.Bankr.P. 7001.

charge" in the state court but made no attempt to ask the court to withdraw its writ.[10]

The bankruptcy case need not have been reopened in order to raise the discharge defensively.

### B

The debtors' next eschewed option was an action to determine the dischargeability of the debt pursuant. to section 523(a)(3) in either state or federal court.[11]

■ Debtor and creditor each have standing to be plaintiff in a declaratory judgment action under section 523(a)(3). Fed. R.Bankr.P. 4007(a).[12] An action under section 523(a)(3) may be filed "at any time." Fed.R.Bankr.P. 4007(b).

■ If the action had been brought as an adversary proceeding in bankruptcy court, the closed case would still need to have been reopened. The $120 fee for reopening, however, does not apply when the case is being reopened for the purpose of litigating a dischargeability action. Fed.R.Bankr.P. 4007(b).[13]

■ The debtors could also have filed a dischargeability action in state court without reopening the bankruptcy case. State and federal courts have concurrent jurisdiction over a section 523(a)(3) action. It is a civil proceeding that "arises under" title 11 as to which the federal courts are granted "original but not exclusive" jurisdiction. 28 U.S.C. § 1334(b); *In re Guzman*, 130 B.R. 489, 491 (Bankr.W.D.Tex.1991); 3 L. King, Collier on Bankruptcy ¶ 523.13[9] (15th ed. 1994); *cf., Siragusa v. Siragusa (In re Siragusa)*, 27 F.3d 406, 408 (9th Cir.1994) (section 523(a)(5)).

■ The choice between state and federal court ultimately is a matter over which the bankruptcy court has some discretion because provisions relating to removal, remand, and abstention apply. A discharge-

---

**10.** Ironically, the debtors here could have attacked the writ in this instance as premised on a void judgment, even without proof that the debt was discharged, because it was entered while the automatic stay indisputably was in effect—three weeks after bankruptcy was filed and three months before the discharge was entered. An act in violation of the automatic stay is void ab initio. *Kalb v. Feuerstein*, 308 U.S. 433, 438–39, 60 S.Ct. 343, 345–46, 84 L.Ed. 370 (1939); *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569 (9th Cir.1992), *contra, Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178–79 (5th Cir. 1989) (voidable). Thus, the writ of execution was issued pursuant to a judgment obtained in violation of the automatic stay and is therefore unenforceable as being premised upon a void judgment.

**11.** That statute provides:
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
  (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;
11 U.S.C. § 523(a)(3).

**12.** Rule 4007(a) provides:

(a) Persons entitled to file complaint. A debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt.
Fed.R.Bankr.P. 4007(a).

**13.** Rule 4007(b) provides:

(b) Time for commencing proceeding other than under § 523(c) of the code. A complaint other than under § 523(c) [= § 523(a)(2), (4), & (6)] may be filed at any time. A case may be reopened without payment of an additional filing fee for the purpose of filing a complaint to obtain a determination under this rule.
Fed.R.Bankr.P. 4007(b).
The $120 filing fee for an adversary proceeding is, however, collected.

ability action may be removed from state to federal court. 28 U.S.C. § 1452(a); Fed. R.Bankr.P. 9027. A removed action may be remanded on any equitable ground. 28 U.S.C. § 1452(b); Fed.R.Bankr.P. 9027(d). And, in a legislative exception to the common law doctrine that a court must hear any matter over which it has jurisdiction, the bankruptcy court may abstain from hearing a dischargeability action in the interest of justice or comity with state courts or respect for state laws.[14] 28 U.S.C. § 1334(c)(1); Fed. R.Bankr.P. 5011(b); S.Rep. No. 95–989, 95th Cong., 2d Sess. at p. 35 1978 U.S.Code Cong. & Ad.News at 5787, 5821 (1978); H.Rep. No. 95–595, 95th Cong., 2nd Sess. 325 (1977); *Swift v. Bellucci (In re Bellucci)*, 119 B.R. 763, 771–73 (Bankr.E.D.Cal.1990).

The likely reason the debtors eschewed a dischargeability action is that damages are not available under section 523(a)(3). No statutory language supports such an award. No cases making such an award have been located. Any monetary award designed to vindicate the discharge must be based on some authority other than section 523(a)(3).

C

Since the debtors seek damages, they could have attempted to proceed by way of contempt.[15] The bankruptcy discharge operates as a permanent injunction. The primary method of enforcing an injunction is contempt. Damages are a recognized sanction for contempt. The debtors would, however, have faced two major obstacles.

First, they would have had to persuade the bankruptcy court to issue an order to show cause why the creditor and bank should not be held in contempt. Obtaining an order to show cause requires a demonstration of facts that, if not rebutted, could be sufficient to warrant an order of contempt. Courts should be cautious when authorizing contempt proceedings. Orders to show cause should not issue merely because someone requests one.

Contempt is serious business that nobody takes lightly. The mere existence of an order to show cause suggests that the court has made a preliminary determination that an order of contempt is a realistic possibility. When issued based on allegations that are unlikely to warrant an order of contempt, the

---

**14.** The question of abstention is determined as a contested matter under Federal Rule of Bankruptcy Procedure 9014. Fed.R.Bankr.P. 5011(b). Although ordinarily raised by way of motion, the court is entitled to raise the question sua sponte so long as it gives the parties an opportunity to be heard. 11 U.S.C. § 105(a). Former Rule 5011(b), which required the bankruptcy court to make a report and recommendation to the district court, was changed after a 1990 amendment to 28 U.S.C. § 1334(c) clarifying that a decision regarding abstention may be appealed to the district court, but no further. Fed.R.Bankr.P. 5011(b) advisory committee's note to 1991 amendment.

**15.** Doubts about the power of bankruptcy judges over contempt in the Ninth Circuit are overblown.

The Ninth Circuit held, before the current version of Federal Rule of Bankruptcy Procedure 9020 took effect, that bankruptcy judges lack inherent and statutory authority to enter final orders of civil contempt and that the district court should review the matter de novo. *Plastiras v. Idell (In re Sequoia Auto Brokers, Ltd.)*, 827 F.2d 1281, 1291 (9th Cir.1987). The Fifth Circuit agrees with respect to criminal contempt.

*Griffith v. Oles (In re Hipp, Inc.)*, 895 F.2d 1503 (5th Cir.1990). The Fourth, Eighth, and Tenth Circuits discern statutory contempt authority in 11 U.S.C. 105(a). *Brown v. Ramsay (In re Ragar)*, 3 F.3d 1174 (8th Cir.1993); *Mountain America Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444 (10th Cir.1990); *Burd v. Walters (In re Walters)*, 868 F.2d 665 (4th Cir.1989).

The Ninth Circuit in *Sequoia Auto Brokers* left open the question whether it would approve the portion of the de novo review procedure under Federal Rules of Bankruptcy Procedure 9020 and 9033 that allows a bankruptcy judge's contempt order to stand if no timely objection is made. Subsequently, it has thrice emphasized the importance of the bankruptcy judge's discretion on the question of compensatory damages for civil contempt. *United States v. Arkison (In re Cascade Roads, Inc.)*, 34 F.3d 756 (9th Cir.1994); *Chugach Timber Corp. v. Northern Stevedoring & Handling Corp. (In re Chugach Forest Prods., Inc.)*, 23 F.3d 241, 244 n. 4 (9th Cir.1994); *Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 620–21 (9th Cir.1993). The tea leaves say that bankruptcy judges have muscle in contempt matters even if their orders might not be final.

order to show cause smacks of bullying and creates perceptions that call the court's impartiality into question.

These prudential considerations lie behind the requirements of Rule 9020(b) regarding the content of notice alleging contempt and, where not given by the court or by the United States attorney, requiring that an attorney giving such notice be appointed by the court for that purpose. Fed.R.Bankr.P. 9020(b).[16]

■ The availability of efficacious remedies short of contempt is a factor for the court to consider in deciding whether to authorize a contempt proceeding. Where, as here, a genuine question about the applicability of a discharge to a particular omitted debt remains after reasonable investigation, a declaratory judgment action under section 523(a)(3) is better suited to resolve the dispute than the bludgeon of contempt.

■ The second obstacle for the debtors would be obtaining the compensatory and punitive damages they request. Compensatory damages for civil contempt are discretionary. Punitive damages are not available in civil contempt.

■ Compensatory damages[17] are discretionary and should not be awarded to the undeserving. *Arkison,* 34 F.3d at 766; *Johnston,* 991 F.2d at 620. The court would have to be persuaded to exercise its discretion to make such an award. In this instance, the fact that the debtors seek relief from a problem caused by their intentional omission of the debt in question makes them poor candidates for a discretionary award of compensation from any of the defendants.

■ As to Wells Fargo, the fact that the bank's actions upon being served with a facially valid writ of execution were in good faith compliance with state law operates as a meritorious defense to contempt and, even if there were a technical violation of the discharge injunction, would make a damages award exceptionally inappropriate.

The problem in obtaining the $10,000 in punitive damages that the debtors demand of each defendant is there is a strict prohibition against punitive damage awards for civil contempt. *United States v. United Mine Workers,* 330 U.S. 258, 304, 67 S.Ct. 677, 701–02, 91 L.Ed. 884 (1947); *Elkin v. Fauver,* 969 F.2d 48, 52 (3d Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 473, 121 L.Ed.2d 379 (1992); *NLRB v. Laborers' Int'l Union,* 882 F.2d 949, 955 (5th Cir.1989); *Crystal Palace Gambling Hall, Inc. v. Mark Twain Indus., Inc. (In re Crystal Palace Gambling Hall, Inc.),* 817 F.2d 1361, 1366–67 (9th Cir.1987); *Allied Materials Corp. v. Superior Prods. Co.,* 620 F.2d 224, 227 (10th Cir.1980); *see generally* Rendleman, *Compensatory Contempt: Plaintiff's Remedy When Defendant Violates an Injunction,* 1980 U.Ill.L.F. 971.

■ In compensatory contempt, as it often is termed, an award to an opposing party is limited to the party's actual loss. *Crystal Palace,* 817 F.2d at 1366. Actual damages are fairly broadly construed to embrace consequential damages and even include attorneys' fees incurred in the civil contempt proceeding. *Allied Materials,* 620

---

16. That rule provides:

(b) Other contempt. Contempt committed in a case or proceeding pending before a bankruptcy judge, except when determined as provided in subdivision (a) of this rule [contempt committed in presence of judge], may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil and shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense. The notice may be given on the court's own initiative or on application of the United States attorney or by an attorney appointed by the court for that purpose. If the contempt charged involves disrespect to or criticism of a bankruptcy judge, that judge is disqualified from presiding at the hearing except with the consent of the person charged.

Fed.R.Bankr.P. 9020(b).

17. The actual loss is perhaps $100. No checks bounced, but there were some bank charges for covering checks from funds that were not levied upon.

F.2d at 227; *Superior Propane v. Zartun (In re Zartun)*, 30 B.R. 543, 546 (Bankr. 9th Cir.1983); Mallor, *Punitive Attorneys' Fees for Abuse of the Judicial System*, 61 N.C.L.Rev. 613, 620–21 (1983). Nevertheless, a damages award in ordinary civil contempt that is not based on evidence of actual loss will be reversed as punitive and as lacking the safeguards inherent in criminal procedure.

■ The distinction between civil and criminal contempt is primarily in the character of the remedy. If the purpose is to punish or to vindicate the court's authority, it is criminal contempt and criminal procedure applies. If wholly remedial and compensatory, it is civil contempt and civil procedure applies. *See Hicks v. Feiock*, 485 U.S. 624, 631–37, 108 S.Ct. 1423, 1429–32, 99 L.Ed.2d 721 (1988); *United Mine Workers*, 330 U.S. at 258, 67 S.Ct. at 677; *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir.1983); Rendleman, *How to Enforce an Injunction*, 1 Litigation, Fall 1983, at 23; 17 Am.Jur.2d "Contempt" §§ 237–40 (1990). If the fine is punitive in character, then the contempt is criminal and the award is not appropriately made to the complainant. *Hicks*, 485 U.S. at 632–34, 108 S.Ct. at 1429–31. Punitive damages, a fortiori, are punitive in nature.

Thus, contempt proceedings would not enable the debtors to achieve their goal of obtaining punitive damages. At best, assuming there were a finding of contempt, they could obtain consequential damages as a fine if awarded by the court acting in its discretion. That probably explains why the debtors did not pursue contempt.

### III

A novel private right of action, quite apart from contempt procedure, is being urged in this adversary proceeding as a basis for the $10,000 in punitive damages the debtors demand from each defendant. No statute confers upon debtors a right to a damages remedy, punitive or otherwise, for violation of the discharge injunction. The courts have not heretofore approved such a private right of action.[18]

■ It is suggested that the catch-all of 11 U.S.C. § 105(a)—"[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title"—could be used to justify a private right of action for punitive damages. The simple answer is that the leap would be too great. It is one thing for section 105 to serve as a statutory basis for contempt,[19] it is another matter to use it to sanction an implied right of action distinct from contempt.

■ It also is suggested that a private cause of action may be implied from the discharge injunction itself. In order to establish the existence of an implied right of action, the debtors have the burden to demonstrate that the Congress intended to make a private remedy available and that the Congress intended to create the specific remedy sought in this case. *Suter v. Artist M.*, —— U.S. ——, ——, 112 S.Ct. 1360, 1370, 118 L.Ed.2d 1 (1992).

The specific test for implying a private cause of action is the *Cort v. Ash* test:

First, is the plaintiff 'one of the class for whose *especial* benefit the statute was en-

---

**18.** Two recently reported bankruptcy decisions involve adversary proceedings in which monetary awards have been sought from the United States for violations of the discharge injunction allegedly committed by the Internal Revenue Service. *Hardy v. United States (In re Hardy)*, 161 B.R. 320 (Bankr.S.D.Ga.1993), *aff'd*, 171 B.R. 912 (S.D.Ga.1994); *Daniels v. United States (In re Daniels)*, 150 B.R. 985 (Bankr.M.D.Ga. 1992). Each decision focused on sovereign immunity because that was the issue the government raised. Neither indicated that contempt analysis was being applied. Neither considered whether a cognizable independent cause of ac-

tion, outside of contempt, exists for violations of the discharge injunction. The final paragraph of the district court decision affirming the dismissal of the *Hardy* adversary proceeding on sovereign immunity grounds assumed, without deciding, "that, had the offending entity been a private litigant, Hardy would have had a viable cause of action for damages." Whether that dictum is accurate depends upon whether the district court was alluding to civil contempt.

**19.** *See supra* note 15.

acted,'—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) (citations omitted).

 The second and third elements of the *Cort v. Ash* test are fatal here. There is no indication of any legislative intent to create such a right of action. Section 105 does not reflect such an intent. Nor is it consistent with the underlying legislative scheme to imply a private cause of action. The legislative scheme provides a permanent injunction for which the traditional and well-known remedy is contempt. If a nontraditional remedy was being prescribed, the Congress could and would have done so. *Cf., Thacker v. Etter (In re Thacker),* 24 B.R. 835, 838 (Bankr.S.D.Ohio 1982).

An important analogy lies in 11 U.S.C. § 362(h), which authorizes an aggrieved individual to recover punitive damages for violation of the automatic stay.[20] In the years before the enactment of section 362(h) in 1984, courts generally declined to imply a damages cause of action, other than through the matrix of contempt, for violation of the automatic stay. *Thacker,* 24 B.R. at 837–39; *Stacy v. Roanoke Memorial Hospitals (In re Stacy),* 21 B.R. 49 (Bankr.W.D.Va.1982);

Stoops, *Monetary Awards to the Debtor for Violations of the Automatic Stay,* 11 Fla.St. U.L.Rev. 423 (1983). The Congress responded by creating a compensatory and punitive damages remedy, independent of contempt, for individuals harmed by willful violation of the automatic stay.

It follows that legislation similar to section 362(h) would be necessary to create a private right of action for punitive damages for violation of the discharge injunction. Perhaps it would be a good idea to clone section 362(h) in section 524, but that is a question for the Congress, not the judiciary.

 In short, the plaintiffs have failed to demonstrate that they are entitled to any relief on their asserted private cause of action. This adversary proceeding must be dismissed without prejudice to the filing of an adversary proceeding under section 523(a)(3).[21]

An appropriate order will issue.

---

**20.** That section provides:
> (h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.
> 11 U.S.C. § 362(h).

**21.** The pleadings are not eligible to be amended to conform to the evidence under Federal Rule of

Civil Procedure 15(b), which is made applicable by Federal Rule of Bankruptcy Procedure 7015. The evidence was inadequate to permit a determination, one way or the other, of whether the particular omitted debt was discharged or not. Accordingly, the temptation to treat this adversary proceeding as stating a count under section 523(a)(3) in order to declare the rights of the parties must be resisted.